UNITED STATES DISTRICT COURT
FOR SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ESTATE OF YEVGENYI A. SCHERBAN;<br>ESTATE OF NADEJDA NIKITINA;<br>EYVGENYI E. SCHERBAN;<br>RUSLAN E. SCHERBAN;<br>YEVGEN E. SCHERBAN<br><br>    Plaintiffs<br><br>  -vs-<br><br>MERRILL LYNCH; aka MERRILL LYNCH CO; aka MERRILL LYNCH PIERCE FENNER SMITH;<br>BANK OF AMERICA N.A.<br><br>and DOES from 1 to 10<br><br>    Defendants | CIVIL ACTION<br>DOCKET No.<br><br>**COMPLAINT**<br><br>**FOR ORDERS BASED ON:**<br>**1. CLAIM UNDER TURNOVER STATUTES;**<br>**2. ACCOUNTING;**<br>**3. DECLARATORY RELIEF** |

## I. NATURE OF ACTION.

This action is for recovery of all and any assets on the accounts of two deceased persons, that remain or may remain at the investment bank entity Merrill Lynch, with offices in New York (including but not limited to, Grand Central Financial Complex 200, Park Avenue, Suite 100, New York, NY).  In 2009, Merrill Lynch was acquired by Bank of America N.A., which completed the merger of this investment bank into that national bank by 2013.  Bank of America is currently ultimately responsible for the assets and records held on the accounts opened by clients with Merrill Lynch before the merger.  The action is brought pursuant to the State law, including but not limited to NY CPLR §5201, *et seq*., by the estates of the two deceased persons and by their three direct heirs (their children), established in Ukraine, whose rights have been determined (in the sense of adjudged) in Ukraine under its laws.  This action is also for accounting as well as for

1

declaratory relief, in light that the heirs of the deceased have been unable to obtain the records concerning the accounts of the two deceased to date.

## II. PARTIES.

1. Plaintiff Estate of Yevgenyi Alexandrovich Scherban, aka Evgueni Chtcherban, aka Yevgen Shcherban, aka Evgen Shcherban Yevgen, aka Evgen Shcherban ("Scherban") is the estate left and remaining after the death of Scherban, who was born in Konstantinovka, Ukraine, on January 18, 1946.  Scherban, a Ukrainian national at all times during his lifetime, obtained a professional education in the technical college in Donetsk, Ukraine, and then continued his education in the Donetsk Polytechnical Institute (University).   In the early 1990s, Scherban set up in Ukraine a cooperative enterprise named Progress, later becoming a holding enterprise named Aton.  By the mid-1990s, Scherban controlled several other enterprises, including Amest, Financier, SP Gefest that owned a network of gas stations in Donetsk region of Ukraine.  Scherban was one of the richest businessmen in Ukraine in the mid-1990s.  On November 3, 1996, Scherban was murdered in Donetsk, as a result of a contract murder conspiracy.  The estate was set up under the authority of the notary public, at the address: 12 Ivana Mazepy Street, Kyiv, 01010, Ukraine, whose determination can be equated to adjudication.

2. Plaintiff Estate of Nadejda Nikitina, aka Nadyia Niktina ("Nikitina") is the estate left and remaining after the death of Nikitina, the second spouse of Scherban.  Nikitina was born in Donetsk, Ukraine, on July 31, 1963.  Nikitina died on November 3, 1996, as a result of the same murder conspiracy in Donetsk, Ukraine, together with her husband, Scherban.  Nikitina is the mother of the third son of Scherban, as cited hereinafter.  The estate was set up in Ukraine, in a similar mode as the estate of Scherban, by the notary public, at 12 Ivana Mazepy Street, Kyiv, 01010, Ukraine, whose determination, likewise, may be equated to adjudication.

3.      Plaintiff Evgenyi E. Scherban, aka Evgueni Chtcherban, aka Evgueni Scherban ("Evgenyi") is the elder of the three children (all three sons) of Scherban. Evgenyi was born on March 30, 1970, in the first marriage of Scherban, to Tatiana Nikolaevna Scherban. Evgenyi's current address is: 16 Ivana Mazepy Street, Apt. 20, Kyiv, Ukraine. Evgenyi is an entrepreneur in Ukraine. Evgenyi is Plaintiff in this action because he is the lawful heir of Scherban and has a lawful claim to his estate.

4.      Plaintiff Rouslan E. Scherban, aka Rouslan Scherban, aka Rouslan Shcherban, aka Rouslan Chtcherban, aka Ruslan Scherban ("Ruslan"), born on January 13, 1977, is the second son of Scherban. Rouslan is the second child from the first marriage of Scherban, to Tatiana Nikolaevna Scherban. Rouslan's current address is: 44 Kirova Street, Apt. 19, Donetsk, Ukraine. Rouslan is an entrepreneur and he has interest in the banking business in Ukraine. Rouslan is Plaintiff in this action because he is the lawful heir of Scherban and has a lawful claim to his estate.

5.      Plaintiff Yevgen Chtcherban, aka Yevgenyi E. Scherban ("Yevgen"), born on December 11, 1982, is the third and youngest of the three sons of Scherban. Yevgen's current address is: 153 Kirova Street, Apt. 39, Donetsk, Ukraine. Yevgen was born in Scherban's second marriage, to Nikitina. Yevgen is an entrepreneur in Ukraine. Yevgen is the Plaintiff is in this matter, because he is one of the lawful heirs of Scherban and of Nikitina and he has a lawful claim to their respective estates.

6.      Defendant Merrill Lynch, aka Merrill Lynch Co., aka Merrill Lynch Pierce Fenner & Smith, aka Merrill Lynch Wealth Management is an investment bank, headquartered in New York. The company was founded on January 6, 1914, when Charles E. Merrill opened Charles E. Merrill & Co. for business at 7 Wall Street in New York. In the same year, Edmund C. Lynch, joined, and in 1915 the name was changed to Merrill, Lynch & Co. Currently it is named Merrill

3

Lynch Wealth Management as the division of Bank of America. It is headquartered in New York City, at 4 World Financial Center in Manhattan. With over 15,000 financial advisors and $2.2 trillion in client assets, Merrill Lynch is the world's largest brokerage institution. Prior to 2009 it was publicly traded on the New York Stock Exchange (NYSE symbol MER). Merrill Lynch agreed to be acquired by Bank of America in 2008. By 2013 it was merged into Bank of America Corporation, although certain Bank of America subsidiaries continue to carry the Merrill Lynch name, including the name of the broker-dealer Merrill Lynch, Pierce, Fenner & Smith. Merrill Lynch is Defendant in this action because, as a garnishee, because it has held the accounts and assets to which Plaintiffs herewith have the claims.

7.      Defendant Bank of America N.A. (BofA) is a national banking and financial services corporation headquartered in Charlotte, North Carolina, with multiple banking centers located nationwide and in New York, including but not limited to, at 261 Broadway, New York, NY. It is the second largest banking holding company in the United States (by the assets). The acquisition in 2008 of Merrill Lynch made BofA the world's largest wealth management banking entity on the investment banking market in the U.S. BofA is a Defendant in this action because it controls Merrill Lynch, as a garnishee, and through its new division, Merrill Lynch, it has held the accounts and assets to which Plaintiffs herewith have the claims.

### III. JURISDICTION.

8.      This Court has jurisdiction pursuant to 28 U.S.C. §1332. Under the laws of New York, a claim to the estate, that has been lawfully determined, with the validity of a foreign judgment, may be collected from garnishees, NY CPLR §5201, *et seq*., such as Defendants herein.

9.      All five Plaintiffs are, for purposes of diversity of citizenship, citizens of Ukraine. Both Defendants are citizens of the State of New York.

10. There exists a complete diversity of citizenship in this matter.

11. This Court has subject matter jurisdiction over the parties because of the diversity of citizenship within the meaning of 28 U.S.C. §1332. The claim exceeds $75,000, the statutory minimum.

12. This Court has jurisdiction over both Defendants, because they have conducted business in New York. The alleged investment accounts were opened at the relevant times at the branch of Merrill Lynch at the address: Grand Central Financial Complex 200, Park Avenue, Suite 100, New York, NY, 10017.

13. Venue is proper in the Southern District of New York. Namely, both Defendants have branches in the proximity of the U.S. District Court for the Southern District of New York, in Manhattan.

## IV. FACTS.

a. Creation of the Family Fortune.

14. After Ukraine became independent in 1991, it started to open up to the free market economy. That included the Donbass region in the Eastern part of Ukraine (with the regional center Donetsk, a nearly one-million people city), which was the most industrially developed region of that country.

15. Scherban, who was born, as mentioned above, in Konstantinovka, Ukraine, on January 18, 1946, obtained his professional education in the technical college in Donetsk, Ukraine. He then continued his education in the Donetsk Polytechnical Institute (which is an equivalent of a university-level education). At the dawn of the market economy in Ukraine, in the early 1990s Scherban set up a cooperative enterprise named Progress, later becoming a large holding enterprise Aton. Scherban controlled, through the holdings held in the name of Aton, several other

enterprises, including Amest and Financier. Furthermore, Scherban controlled SP Gefest that owned a network of gas stations in Donetsk region.

16. In March of 1994, Scherban was elected to the Rada of Ukraine (the national parliament, upon the first election in the independent country). Scherban belonged to the parliamentary faction, called the Social Market Choice. He was also a member of the Executive Committee of the Liberal Party of Ukraine.

17. As mentioned above, Scherban was one of the richest business men in Ukraine in the early and mid-1990s. Scherban was the leading entrepreneur in Donbas and in the Donbass region. By way of various estimates, the assets under Scherban's control surpassed $100 million.

18. Scherban was a strong competitor, who was in the way of the criminal groups who sought to deprive Scherban of his business interests and to raid the business entities which he controlled. As such, Scherban was subject to an assassination conspiracy. On information and belief, that conspiracy was connected to Scherban's control over the natural gas distribution network and imports for the Donetsk region in Ukraine.

19. The murder conspiracy, that resulted in the murders on November 3, 1996, was subject to several criminal proceedings in Ukraine and it has been widely published. After the initial lack of progress in the investigation, the conspiracy was uncovered only in approximately 2000.

20. The investigation and subsequently the criminal trial determined that the murder conspiracy was implemented by two members of a criminal gang, that was involved altogether in the murders of at least 25 people. The gang that executed the assassination was headed by Alexander Milchenko ("Milchenko") and Yevgen Kushnir ("Kushnir"), who were both subsequently killed themselves, by their rivals.

21. That gang put into motion on November 3, 1996 a murder conspiracy where two men posing as militia officers, with hidden firearms, entered the tarmac of Donetsk airport. The conspirators awaited on the tarmac of the airport Scherban's arrival by a private plane. Scherban, Nikitina, Rouslan and several other persons came from the plane to the awaiting car.

22. The gunmen were Vadim Bolotskikh ("Bolotskikh") and Gennadiy Zangelidi ("Zangelidi"). Bolotskhih and Zangelidi used on the tarmac the firearms, whereas other gang members awaited them, with a getaway car, behind the wall of the tarmac of the airport. The gunmen killed Scherban and Nikitina. They also shot dead two more persons who happened to be close and wounded one more. Rouslan, as mentioned above, was among the persons who came by plane, but he escaped the bullets fired by the above two gunmen. After the assassination, all the participants in that conspiracy fled.

23. The Ukrainian prosecution has claimed that the conspiracy was a result of a contract murder, for the amount of $3 million, out of which actually the total of $2,497,000, in several transfers, was paid to the accounts controlled by Milchenko and Kushnir in Antigua and in Austria.

24. By 2002, Bolotskikh, seven more men belonging to the gang previously headed by Milchenko and then by Kushnir, were arrested and tried for the murder. All of them were found guilty, three received life sentences. That included Bolotskikh, who serves a life sentence in Ukraine.

25. Ukrainian prosecutors have stated the murder was intended to eliminate competition for control of Ukraine's natural gas industry, particularly from the side of United Energy Systems of Ukraine, PFG ("UESU"). According to several criminal matters, the gang that executed the assassination plot was related to the former Prime Minister of Ukraine, Pavlo Lazarenko ("Lazarenko").

7

26. After being fired as a Prime Minister in July of 1997, Lazarenko was stripped of immunity and in February of 1998 he came to New York, where he was detained and then arrested. Subsequently, in 2004, Lazarenko was convicted in the U.S. District Court for the Northern District of California, of 8 counts of money laundering. Lazarenko served over 8 years imprisonment in the USA and, on information and belief, he is still in the USA resisting a deportation to Ukraine.

b. Inheritance, Estates, and Claims of Heirs

27. As stated above, on November 3, 1996, Scherban and Nikitina were murdered in Donetsk, as a result of a contract murder conspiracy.

28. The rights and claims of their heirs were resolved in Ukraine in the course of the proceedings and final determination of the notary public's office in Ukraine, in accordance with the laws of Ukraine. Those rights and claims were governed by Article 529 of the Civil Code of Ukraine. Under the laws of Ukraine, in accordance with the traditions of the continental law countries, where notaries have special legal powers, the notaries' determinations concerning rights to the estates are considered to be equated to the judicial determinations of probate courts in the U.S.

29. Article 529 of the Civil Code of Ukraine prescribes that the heirs of the deceased have the lawful claims to the assets left after his/her death wherever such assets may be located. The said Article also prescribes that the material or monetary form of the assets does not matter and that the heirs have the lawful claims to any and all such assets.

30. In particular, the above enumerated individual plaintiffs, all three sons of Scherban, were determined in Ukraine to be the lawful heirs of Scherban. Additionally, Yevgen, the younger of the three sons, was determined also to be the lawful heir of Nikitina.

31.     Plaintiffs are ready and willing to disclose before the Court and to Defendants the full inheritance documentation in due course, subject to the legitimate considerations of privacy.

c.  <u>Investment Accounts at Merrill Lynch Subject to the Inheritance Claims.</u>

32.     In the mid-1990s, prior to his death on November 3, 1996, Scherban set up several investment accounts at Merrill Lynch, for himself and for the certain members of his family.

33.     Those accounts were set up with the private client group 1011730, at the branch with the address: Grand Central Financial Complex 200, Park Avenue, Suite 100, New York, NY, 10017.

34.     The representative of Merrill Lynch for working with this group of clients in New York was Jacqueline B. Spiro.  The financial consultant was Jeffrey Schneider (who, on information and belief, currently works at Ascendant Capital, 7004 Bee Cave Road  Building III, Suite 300  Austin TX, 78746, tel. 877.410.1250).  That information is available from the certain banking records from Merrill Lynch available to Plaintiffs.

35.     The accounts at Merrill Lynch, set up for Yevgen A. Chtcherban included, but were not limited to, Nos 85D-13378, 85D-13978.

36.     The investment accounts at Merrill Lynch set up by Scherban for Nikitina were Nos. 85D-14083, 85D-13960.

37.     In addition to the accounts in the names of the deceased, Scherban set up accounts for Evgenyi, namely No. 85D-14215.   Scherban also set up an account for Rouslan, namely No. 85D-14212.

38.     On repeated occasions, Plaintiffs attempted to approach the representatives of Merrill Lynch, in order to find out about the accounts that rightfully belong to the estate of

Scherban and of Nikitina. However, these approaches were unsuccessful, no information has been provided by Merrill Lynch to date. This has ultimately necessitated the present action.

## COUNT I.  CLAIM UNDER TURNOVER STATUTES.

39. Plaintiffs incorporate by reference the allegations in the preceding paragraphs 1 to 38 as if plead again with the same force and effect.

40. As mentioned above, the accounts set up at Merrill Lynch for Scherban included, but were not limited to, Nos 85D-13378 and 85D-13978. The investment accounts at Merrill Lynch set up by Scherban for Nikitina were designated as Nos. 85D-14083 and 85D-13960.

41. On information and belief, interest accrued since November 3, 1996, could have eventually doubled the balance of the assets by this time.

42. As mentioned above, the claims of adjudged creditors against garnishees are governed in New York, *inter alia*, by NY CPLR §5201, *et seq*.

43. Plaintiffs have lawful claims against both Defendants as to any and all assets held on the accounts of Scherban and Nikitina, inclusive any interest accrued since November 3, 1996.

## COUNT II.  ACCOUNTING.

44. Plaintiffs incorporate by reference the allegations in the preceding paragraphs 1 to 43 as if plead again with the same force and effect.

45. Plaintiffs should be able to obtain any and all documentation related to the investment accounts of Scherban and of Nikitina. As mentioned above, the accounts set up at Merrill Lynch, for Scherban included, but were not limited to, Nos 85D-13378 and 85D-13978. The investment accounts at Merrill Lynch set up by Scherban for Nikitina were Nos. 85D-14083 and 85D-13960.

46. Additionally, despite the approaches of the certain Plaintiffs, namely Yevgenyi and Rouslan, they were unable to obtain from Merrill Lynch the complete statements from their own accounts, i.e. 85D-14215 and 85D-14212, for a number of years, without limitation.

47. Additionally, Plaintiffs believe that Scherban could have made investment deposits at Merrill Lynch in favor of his three sons on the accounts other than the above two, of which they learnt, given their relatively young age at the time.

48. Plaintiffs are entitled to relief herein against both Defendants, under the claim based on accounting. Defendants should deliver to Plaintiffs all the statements and other records concerning all the above mentioned accounts, without limitation as to any accounts opened by Scherban, still unknown at this time.

### COUNT III. DECLARATORY RELIEF.

49. Plaintiffs incorporate by reference the allegations in the preceding paragraphs 1 to 48 as if plead again with the same force and effect.

50. As mentioned above, the estates of Scherban and Nikitina were set up Ukraine, by the Ukrainian notary public, pursuant to the Ukrainian law, namely Article 529 and other statutes of Ukraine.

51. There is a substantial nexus of both deceased to Ukraine, where there were born, lived most of their times and where the family fortune was primarily created.

52. Likewise, all of the three individual heirs and Plaintiffs in this action are citizens of Ukraine.

53. A recognition of the determinations of the notary public in Ukraine as an approximate equivalent to a probate proceedings courts in the U.S. Those determinations were

implemented under the local laws of Ukraine, by the lawfully designated notaries public, and those should be subject to the full recognition in the State of New York.

54.   There is a possible controversy, to be resolved herewith, whether the Ukrainian probate law and the particular determinations concerning the estates of Scherban and Nikitina should be recognized and adopted in the State of New York.  That controversy, of recognizing the probate determinations from Ukraine by the Ukrainian notary public, could be appropriately resolved in this action by way of declaratory relief.

55.   Plaintiffs are entitled to relief under the present Count based on declaratory judgment relief.

Wherefore, Plaintiffs pray for the following relief:

A) – To recover from any and all accounts left after the deceased, Scherban and Nikitina, found at Merrill Lynch and/or BofA, all the monetary assets or securities, and to transfer those to the lawful heirs;

B) – To order Merrill Lynch and BofA to release to Plaintiffs herein all and any records and other documentation associated with the above identified accounts, as well as any other assets held for the deceased, known or unknown to date, without limitation.

C) - To judicially recognize and adopt the determination of the rights of the heirs of the estates of Scherban and Nikitina in the State of New York, as those were already lawfully determined under the laws of Ukraine.

//

//

//

Respectfully submitted,

Dated: August 6, 2014

/s/___(Peter A. Joseph)
Peter A. Joseph, Esq.
Bar PJ-9723
177 Waverly Place # 5F
New York, NY, 10014-3552
Tel. (212) 924 1498

/s/___(George Lambert)
George Lambert, Esq.
D.C. bar #979327,
subject to admission pro hac vice
Law Offices of Leonard Suchanek
1025 Connecticut Ave., #1000 NW
Washington, D.C., 20036
Tel. (202) 640 1897, Fax (800) 952 1950