USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: __6/23/2021__

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
                                 :

ESTATE OF YEVGENYI A. SCHERBAN;  :
ESTATE OF NADEJDA NIKITINA;        :
EYVGENYI E. SCHERBAN; RUSLAN E.  :
SCHERBAN; and YEVGEN E. SCHERBAN, :             14-CV-6312 (VSB)
                                 :

                 Plaintiffs,    :            **OPINION & ORDER**
                                 :

          -against-             :

MERRILL LYNCH a/k/a MERRILL LYNCH :
CO. a/k/a MERRILL LYNCH PIERCE   :
FENNER SMITH; and DOES 1-10,     :
                                 :

               Defendants.  :
                                 :
-------------------------------------------------------X

Appearances:

George A. Lambert
Law Offices of Leonard Suchanek
Washington, DC

Peter Alan Joseph
Law Offices of Peter Joseph
New York, NY
*Counsel for Plaintiffs*

David J. Libowsky
Dominick F. Evangelista
Bressler, Amery & Ross
New York, NY
*Counsel for Defendant*

VERNON S. BRODERICK, United States District Judge:

       Plaintiffs bring this motion pursuant to section 10 of the Federal Arbitration Act

("FAA"), and request that I vacate an arbitration panel's award dismissing Plaintiffs' claims that

I previously ordered were subject to arbitration. Defendant cross-moves to correct the award and

confirm it as modified. Because I find that that vacatur is not warranted on any of the grounds asserted by Plaintiffs, and that the error in the award is of the type that I have the power to correct, Plaintiffs' motion to vacate is DENIED, and I correct the award and confirm it as modified.

## I.    __Factual Background__[1]

This case, which seeks monies that Plaintiffs allege are owed to them from certain accounts held by Merrill, Lynch, Pierce, Fenner, and Smith ("Merrill Lynch", "Defendant", or "Respondent") was filed on August 8, 2014. (Doc. 1.) Thereafter, I ordered that certain portions of the claims be subject to arbitration. (Docs. 31, 49.) On March 1, 2019, a Financial Industry Regulatory Authority ("FINRA") Office of Dispute Resolution panel issued an award ("Scherban Award" or "Award") dismissing all of claimants' claims, (Libowsky Decl. Ex. T, Award).[2] The facts recited below are those that are relevant to the parties' cross motions to vacate and to correct and confirm the Award.

### A.    *Underlying Arbitration Claims*

The arbitration at issue arises out of claims brought by three brothers related to their deceased father's assets ("Scherban Arbitration"). The Estate of Yevgenyi Scherban[3], the Estate of Nadejda Nikitina[4], Eyvgenyi E. Scherban ("Eyvgenyi")[5], Ruslan E. Scherban, ("Ruslan")[6],

---

[1] The facts in this section are drawn from the record before me, which includes numerous declarations and exhibits.

[2] "Libowsky Decl." refers to the Declaration of David J. Libowsky, Esq. filed by Merrill Lynch on April 22, 2019. (Doc. 64.)

[3] I will refer to the deceased Yevgenyi Scherban as "Scherban" and to the estate as "Scherban Estate."

[4] Nadejda Nikitina was the wife of Scherban at the time of his death. (Doc. 54-2, Amended (Second) Statement of Claim ¶ 2.) I will refer to the deceased Nadejda Nikitina as "Nikitina" and to the estate as "Nikitina Estate."

[5] I assume for purposes of my Opinion & Order that Eyvgenyi is the same person as Evgenyi, and is also at times referred to as Yevgenyi Scherban. (*Compare* Doc. 54-2 ¶ 3 *with* Doc. 55, Affidavit of Eyvgenyi E. Scherban) (signed Yevgenyi E. Scherban.) Eyvgenyi is Scherban's oldest child. (Doc. 54-2 ¶ 3.)

[6] Ruslan is Scherban's middle child. (Doc. 54-2 ¶ 4.)

and Yevgen Scherban ("Yevgen")[7] (collectively "Claimants" or "Plaintiffs") brought before

FINRA 18 counts, including claims of fraud, fraudulent concealment, money had and received,

civil conspiracy, violation of New York's abandoned property law, and violation of New York's

deceptive acts and practices law ("General Business Law § 349") against Merrill Lynch

stemming from Merrill Lynch's alleged handling of the family's accounts.[8] (Sec. Amend.

Claim.)[9] Plaintiffs sought numerous forms of relief, including compensatory damages in the

amount of $3,577,976.00. (Award, Doc. 64-20 at 4.)

### B.    *The Arbitration*

On November 13, 2015, Plaintiffs commenced the Scherban Arbitration by filing a State

of Claim with FINRA. (Libowsky Decl. ¶ 8.) On February 5, 2016, in connection with the

parties' selection of arbitrators, FINRA provided the parties with an initial arbitrator disclosure,

which listed potential arbitrators and indicated one of the potential arbitrators, David I. Goldblatt

("Goldblatt"), had previously presided over a matter involving Merrill Lynch, and had awarded

Merrill Lynch $953,202.02 ("Blackburn Award"). (*Id.*; *see* Libowsky Decl. Ex. G.)[10] The

parties then had the opportunity to strike and rank the proposed arbitrators; these rankings were

to be submitted to FINRA. (Libowsky Decl. Ex. F.) After receiving parties' rankings, FINRA's

---

[7] Yevgen is Scherban's youngest child. (Doc. 54-2 ¶ 5.)

[8] In Claimants' initial Statement of Claim, Claimants asserted an accounting cause of action, and a claim for turnover of balances. (*See* Award, Doc. 64-20 at 3.) Claimants did not assert these claims in their Amended (Second) Statement of Claim. (*Id.*)

[9] "Sec. Amend. Claim" refers to Claimants' Amended (Second) Statement of Claim, filed before FINRA on August 9, 2018. (Doc. 54-2.) It bears noting, that based on my orders regarding what claims should be arbitrated, (*see* Docs. 31, 49), Ruslan was a claimant in his individual capacity, (*see* Sec. Amend. Claim ¶ 4). Plaintiffs joined Eyvgenyi in the Scherban Arbitration "because he is a real party in interest on the claims made by the Estate of, at a minimum, Scherban," (*id.* ¶ 3), and Yevgen was a "Claimant is in this matter, because he is one of the lawful heirs of Scherban and of Nikitina and he has a lawful claim to their respective estates," (*id.* ¶ 5). For purposes of this Opinion & Order, I will refer to Claimants and Plaintiffs interchangeably, although I note that their legal positions and capacities in which they appear in the Scherban Arbitration and in the claims before me are not identical.

[10] Exhibit G to the Libowsky Declaration is the Blackburn Award. (Doc. 64-7.)

practice is to consolidate the rankings to appoint the panel. (*Id.*) FINRA notified the parties on March 14, 2016 that Goldblatt had been appointed as the Chairman of the three-arbitrator panel ("Panel") that would preside over the hearing in the Scherban Arbitration, and provided an updated disclosure report which disclosed the Blackburn Award. (Libowsky Decl. ¶ 9; Ex. H.)[11] On April 11, 2016, FINRA provided the parties with an updated disclosure checklist submitted by Goldblatt that indicated he had "served as an arbitrator on two cases in which Merrill Lynch was a party," and listed two cases numbers, (*id.* ¶ 10; Ex. I, at 15)[12]; one of those was the arbitration that resulted in the Blackburn Award, (Libowsky Decl. ¶ 10). On October 3, 2017, FINRA provided the parties with an updated disclosure report which disclosed the Blackburn Award and an arbitration closed on April 26, 2016, (*id.* ¶ 12; Ex. K)[13], in which Merrill Lynch was awarded $151,306 on April 21, 2016 ("Nabil Award"), (Libowsky Decl. Ex. D).[14] On July 18, 2018, Goldblatt issued an award in an arbitration involving Merrill Lynch, which recommended expungement ("Loesberg Award"). (*Id.* ¶ 7; Ex. E.)[15] This award was never disclosed by Goldblatt to the parties.[16] Plaintiffs never moved to disqualify Goldblatt or objected in any way to Goldblatt's appointment to the Panel. (*Id.* ¶ 13.)

Before the hearing on the Scherban Arbitration began, both parties submitted lengthy pre-hearing memoranda of law. (*See* Doc. 59; Libowsky Decl. Ex. R.) The parties also submitted

---

[11] Exhibit H to the Libowsky Declaration is the updated arbitrator disclosure report, dated March 14, 2016. (Doc. 64-8.)

[12] Exhibit I to the Libowsky Declaration is Goldblatt's updated arbitrator disclosure checklist, dated April 11, 2016. (Doc. 64-9.)

[13] Exhibit K to the Libowsky Declaration is the updated arbitrator disclosure report, dated October 3, 2017. (Doc. 64-11.)

[14] Exhibit D to the Libowsky Declaration is the Nabil Award. (Doc. 64-4.)

[15] Exhibit E to the Libowsky Declaration is the Loesberg Award. (Doc. 64-5.)

[16] I could not locate anything in the record to indicate that the Loesberg Award was disclosed by Goldblatt to the parties, and Merrill Lynch has not indicated otherwise; therefore, I accept Plaintiffs' assertion that it was not disclosed, (*see* Pls.' Reply 2), as true for purposes of this Opinion & Order.

their respective witness lists. (Libowsky Decl. ¶ 14.) Merrill Lynch indicated that it reserved the right to call Anna Roccanova ("Roccanova"), a Merrill Lynch employee, and Joanne Franco ("Franco") in its direct case. (*Id.* Ex. P; Roccanova Decl. ¶ 7.)[17] Plaintiffs also reserved the right to call Roccanova in their direct case. (Eyvgenyi Aff. Ex. A.)[18]

The hearing occurred on December 4, 5, 6, 7, 10 and 11, 2018, and February 11, 2019 at FINRA's New York office ("Hearing"). (Libowsky Decl. ¶ 15; Roccanova Decl. ¶ 3; Eyvgenyi Aff. ¶ 3.) Plaintiffs called ten witnesses in their case-in-chief. (Libowsky Decl. ¶ 15.) Plaintiffs did not call Roccanova or Franco, despite reserving their right to call Roccanova. (Roccanova Decl. ¶ 7.) Witnesses testified from their seats, and no witnesses were provided with microphones. (Eyvgenyi Decl. ¶ 4.) There was a microphone in the ceiling for audio recording. (Mtn. to Vacate 4 n.2.)[19] Four of Plaintiffs' witnesses testified in Russian, and a translator was used throughout. (Roccanova Decl. ¶ 4.) At times, Goldblatt cupped his ear with the palm of his hand and asked the translator to repeat him or herself, asked people to speak louder, and asked people to repeat themselves. (*See id.*; Eyvgenyi Aff. ¶ 5; Pls.' Reply. 11–14.)[20] Goldblatt was not observed using a hearing aid or other assisted listening device. (Roccanova Decl. ¶ 6.)

Plaintiffs' witness, Yevgen, was not able to obtain a visa to come to the United States to testify. (Libowsky Decl. ¶ 4.) The Panel ordered that Yevgen's declaration would be received in evidence in lieu of his direct testimony, and Merrill Lynch would have the opportunity to cross-

---

[17] Exhibit P to the Libowsky Declaration is Merrill Lynch's 20-day exchange letter. (Doc. 64-16.) "Roccanova Decl." refers to the Declaration of Anna Roccanova, filed by Merrill Lynch on April 22, 2019. (Doc. 63.)

[18] "Eyvgenyi Aff." refers to the Affidavit of Eyvgenyi E. Scherban, filed by Plaintiffs on March 30, 2019. (Doc. 55.) Exhibit A to the Eyvgenyi Affidavit is Plaintiff's 20-day exchange letter. (Doc. 55-1.)

[19] "Mtn. to Vacate" refers to Plaintiffs' motion to vacate the Scherban Award and remand for rehearing, filed on March 30, 2019. (Doc. 54.)

[20] "Pls.' Reply" refers to Plaintiffs omnibus memorandum in opposition to Merrill Lynch's cross-motion and reply to Merrill Lynch's opposition, filed on April 29, 2019. (Doc. 66.)

examine Yevgen by Skype. (Libowsky Decl. Ex. A.)[21] The cross-examination of Yevgen was subsequently taken on Skype outside of the presence of the Panel, and the cross-examination transcript was received in evidence. (Libowsky Decl. ¶ 5.) Plaintiffs' counsel stated that the Panel could question Yevgen by Skype, but they declined. (*Id.*; Feb. 11 Tr. 7:20-8:8.)[22] Two of Plaintiffs' witnesses and Plaintiffs' counsel did not observe Goldblatt review the transcript of Yevgen's cross examination. (*See* Eyvgenyi Aff. ¶ 8; Ruslan Aff. ¶ 8; Lambert Decl. ¶ 8.)[23]

After Plaintiffs rested, Merrill Lynch moved orally to dismiss Plaintiffs' claims on the grounds that Plaintiffs failed to make a prima facie case, and that many of the claims were barred by the statute of limitations. (*See* Feb. 11 Tr. 103–113.) Plaintiffs' counsel argued in opposition to the motion. (*Id.* at 113–34.) Goldblatt then excused the parties so that the Panel could "caucus," and once the parties returned, Goldblatt indicated that the Panel would grant Merrill Lynch's motion to dismiss. (*Id.* at 134.) On March 1, 2019, the Panel issued the Award indicating that "[t]he Panel determined that all claims were time barred, having been filed at between 13 and 18 years after the alleged claims arose," and dismissed Claimants' claims with prejudice. (Award, Doc. 64-20 at 4–5.)

## II.    <u>Procedural History</u>

On August 8, 2014, Plaintiffs filed this action asserting a claim under the turnover statutes, an accounting claim, and requesting declaratory relief arising out of accounts allegedly held by Merrill Lynch. (Doc. 1.) Plaintiffs sought to recover all assets left by Scherban and Nikitina in Merrill Lynch accounts; to order Merrill Lynch to release records related to the

---

[21] Exhibit A to the Libowsky Declaration is the Panel's February 4, 2019 order regarding Yevgen's testimony. (Doc. 64-1.)

[22] "Feb. 11 Tr." refers to the transcript of the Hearing session held on February 11, 2019. (Doc. 64-3.)

[23] "Ruslan Aff." refers to the Affidavit of Ruslan E. Scherban, filed on March 30, 2019. (Doc. 56.) "Lambert Aff." Refers to the Declaration of George Lambert, filed on April 29, 2019. (Doc. 67.)

accounts; and to judicially recognize and adopt the determination of the rights of the heirs of the Scherban and Nikitina Estate in the State of New York. (Doc. 1 ¶ 55.)[24]  On October 10, 2014, Merrill Lynch moved to compel Plaintiffs to arbitrate their claims, and requested a stay pending completion of the arbitration. (Doc. 16.)  On November 5, 2014, I held a hearing on Merrill Lynch's motion, (Doc. 26), and on September 30, 2015, I issued an ordering granting Merrill Lynch's motion in part, (Doc. 31).  In my order I:  (1) denied Merrill Lynch's motion to compel arbitration of the Individual Plaintiffs' claims concerning Scherban's and Nikitina's accounts; (2) denied Merrill Lynch's motion to compel arbitration of Eyvgenyi's claims concerning his account; (3) denied Merrill Lynch's motion to compel arbitration of the Scherban Estate's and Nikitina Estate's declaratory judgment claim; (4) granted Merrill Lynch's motion to compel arbitration of the Scherban Estate's and Nikitina Estate's accounting and turnover claims; and (5) reserved ruling on Merrill Lynch's motion to compel arbitration of Ruslan's claims concerning his account until after a hearing on the issue. (Doc. 31.)  Additionally, I stayed the case pending arbitration. (*Id.*)  On December 22, 2015, I held an evidentiary hearing on the validity of the signature of Ruslan on the Cash Management Account Agreement opened in his name in 1995. (Doc. 42.)  The parties then submitted post-hearing briefing on the issue. (Docs. 44, 45.)  I subsequently found that Ruslan was estopped from denying his obligation to arbitrate his individual claims, and granted Merrill Lynch's motion to compel arbitration of Ruslan's individual claims concerning his account. (Doc. 49.)

On October 26, 2018, the parties filed a joint letter indicating that a FINRA arbitration hearing had been scheduled for December 4–6, 2018. (Doc. 51.)  On January 3, 2019, the parties

---

[24] Initially, this action was also brought against Bank of America N.A.; however, on October 10, 2014, the claims against Bank of America N.A. were voluntarily dismissed without prejudice. (Doc. 15.)

filed another letter stating that the FINRA hearing had occurred on December 4–6 and 11–12, 2018, but was not yet complete, and that the hearing would resume on February 11–12, 2018. (Doc. 53.) On March 30, 2019, Plaintiffs moved to vacate the Scherban Award. (Doc. 54.) On April 22, 2109, Merrill Lynch filed a cross-motion to correct and confirm the Scherban Award. (Doc. 62.) On April 29, 2019, Plaintiffs filed an omnibus opposition to Merrill Lynch's cross-motion and a reply. (Doc. 66.)

### III.    Legal Standard

The FAA provides a "streamlined" process for a party seeking "a judicial decree confirming an award, an order vacating it, or an order modifying or correcting it." *Hall St. Assocs. L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 582 (2008). In reviewing an arbitration award, a federal district court "can confirm and/or vacate the award, either in whole or in part." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 104 (2d Cir. 2006). Specifically, under section 9 of the FAA, "a court 'must' confirm an arbitration award 'unless' it is vacated, modified, or corrected 'as prescribed' in §§ 10 and 11." *Hall St. Assocs.*, 552 U.S. at 582 (quoting 9 U.S.C. § 9). Under section 10 of the FAA, a district court may vacate an arbitration award on four grounds, including "where there was evident partiality or corruption in the arbitrators, or either of them" or "where the arbitrators were guilty of misconduct . . . . in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced." 9 U.S.C. § 10(a)(2), (3). "Consistent with federal policy favoring arbitration, these vacatur provisions are to be accorded the narrowest of readings." *Beljakovic v. Melohn Properties, Inc.*, No. 04 CIV. 3694 JMF, 2012 WL 5429438, at *2 (S.D.N.Y. Nov. 7, 2012), *aff'd*, 542 F. App'x 72 (2d Cir. 2013) (internal quotation marks omitted). The Second Circuit has found "as judicial gloss on these specific grounds for vacatur of arbitration awards,"

that a "court may set aside an arbitration award if it was rendered in manifest disregard of the law." *Schwartz v. Merrill Lynch & Co.*, 665 F.3d 444, 451 (2d Cir. 2011) (internal quotation marks omitted) (collecting cases).

"A motion to vacate filed in a federal court is not an occasion for *de novo* review of an arbitral award." *Wallace v. Buttar*, 378 F.3d 182, 189 (2d Cir. 2004). An arbitration panel's decision is given "great deference," and "[a] party petitioning a federal court to vacate an arbitral award bears the heavy burden of showing that the award falls within a very narrow set of circumstances delineated by statute and case law." *Id.*; *see Scandinavian Reinsurance Co. v. Saint Paul Fire & Marine Ins. Co.*, 668 F.3d 60, 71–72 (2d Cir. 2012) (observing that "[a] court's review of an arbitration award is . . . 'severely limited,'" and in order to obtain vacatur a party "must clear a high hurdle") (quoting *ReliaStar Life Ins. Co. of N.Y. v. EMC Nat. Life Co.*, 564 F.3d 81, 85 (2d Cir.2009) and *Stolt–Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671 (2010)).

Under section 11 of the FAA, a district court "may make an order modifying or correcting the award upon the application of any party to the arbitration" where there was "an evident material mistake in the description of any person, thing, or property referred to in the award" or where "the award is imperfect in matter of form not affecting the merits of the controversy." 9 U.S.C. § 11 (a), (c). "[A] district court can remand an award to the arbitrator for clarification where an award is ambiguous." *Hyle v. Doctor's Assocs., Inc.*, 198 F.3d 368, 370 (2d Cir. 1999).

## IV.   Discussion

### A.   *Motion to Vacate*

Plaintiffs seek to vacate the award on five different grounds: (1) that Goldblatt was not

fit to serve on the Panel; (2) that Goldblatt was partial to Merrill Lynch; (3) that the Panel engaged in misconduct; (4) that the Panel disregarded certain facts and evidence; and (5) that the Panel manifestly disregarded the law.

## 1. Fitness to Serve

Although Plaintiffs attempt to disguise their core argument, (*see, e.g.*, Eyvgenyi Aff. ¶ 6. ("I make a disclaimer that I am not referring to the age of the chairman (who, according to FINRA's information, was enrolled to college in 1954)")), at bottom, Plaintiffs' argument is that Goldblatt was not fit to serve on the Panel due to his age or conditions related to his age. Plaintiffs argue that "an objective person could determine that the panel chairman was not the right person for lengthy and complicated proceedings," (Mtn. to Vacate 6), and attempt to bolster this argument with conclusory statements from interested witnesses, none of whom seem to have a medical degree, who assert that Goldblatt could not hear the testimony, had an "obvious hearing impairment," had a serious medical condition, and wanted to terminate the hearing as soon as possible. (*See, e.g.*, Eyvegeni Aff. ¶¶ 5–7; Didukh Aff. ¶ 5; Lambert Decl. ¶¶ 17–19.)[25] Other than these conclusory allegations, Plaintiffs point to no evidence other than a portion of the transcript where Goldblatt had a hard time understanding counsel's use of the phrase "lucrative silence." (Pls.' Reply. 11–14.) Goldblatt asking witnesses to repeat themselves and cupping his ear at times can be explained by the fact that the witnesses did not have microphones and four of them used a translator.[26] (*See* Eyvgenyi Aff. ¶ 4; Roccanova Decl. ¶ 4.) The "terminat[ion]" of the hearing, (*see* Eyvgenyi Aff. ¶ 7), is explained by the fact that Plaintiffs completed their case-

---

[25] "Didukh Decl." refers to the Affidavit of Yuri N. Didukh, who testified on behalf of Claimants, filed on March 30, 2019. (Doc. 58.) I note that initially, Plaintiffs submitted affidavits only from witnesses who testified on behalf of Plaintiffs, including Plaintiffs themselves. With their reply, Plaintiffs also submitted a declaration from Plaintiffs' counsel, who makes similar conclusory statements. (*See* Lambert Decl.)

[26] I note that it is not uncommon during proceedings in my courtroom—where we use microphones—for me, the attorneys, or the court reporter to ask someone to repeat something they have said or to ask that someone speak up.

in-chief in the early afternoon, the Panel decided Merrill Lynch would make its motion to dismiss after the lunch break, the Panel then heard oral argument, and thereafter granted Merrill Lynch's motion to dismiss, (*see* Roccanova Decl. ¶ 6.)  Additionally, Merrill Lynch submits a declaration from Roccanova, who attended all seven days of the hearing, and attests that she did not perceive that Goldblatt was suffering "from any 'serious medical condition' . . . [n]or as a general matter did he appear not to be in good health."  (Roccanova Decl. ¶ 6.)

Plaintiffs cite to no case law that supports their position that these are proper grounds to vacate an arbitration award; instead, Plaintiffs rely on wholly inapposite cases involving hearing-impaired criminal defendants.  (*See* Mtn. to Vacate 6–7.)  I decline to vacate the Award on these grounds.

## 2.  Partiality

### a.  Applicable Law

A court can only vacate an award for evident partiality "where a reasonable person would have to conclude that an arbitrator was partial to one party to the arbitration."  *Scandinavian*, 668 F.3d at 72 (internal quotation marks omitted).  This requires a "a showing of something more than the mere 'appearance of bias.'"  *Morelite Const. Corp. v. N.Y.C. Dist. Council Carpenters Ben. Funds*, 748 F.2d 79, 83 (2d Cir. 1984).  However, proof of actual bias is not required, and a "conclusion of partiality can be inferred 'from objective facts inconsistent with impartiality.'"  *Scandinavian*, 668 F.3d at 73 (quoting *Pitta v. Hotel Ass'n of N.Y.C., Inc.*, 806 F.2d 419, 423 n.2 (2d Cir. 1986)).  Such a showing "may not be based simply on speculation."  *Id.* (quoting *United States v. Int'l Bhd. of Teamsters*, 170 F.3d 136, 147 (2d Cir. 1999)); *see also Three S Del., Inc. v. DataQuick Info. Sys., Inc.*, 492 F.3d 520, 530 (4th Cir. 2007) (noting that the "asserted bias" may not be "remote, uncertain or speculative" (internal quotation marks omitted)).  The burden of

proving evident partiality "rests upon the party asserting bias." *Scandinavian*, 668 F.3d at 72 (internal quotation marks omitted).

<h3 style="text-align:center">b. <u>Application</u></h3>

Plaintiffs assert that the Award should be vacated on the grounds that there was "evident partiality" because Goldblatt had served as an arbitrator for Merrill Lynch twice before, and had ruled in Merrill Lynch's favor both times. (Mtn. to Vacate 8–9.) Additionally, Plaintiffs aver that Goldblatt concealed that he had served again as an arbitrator in an action involving Merrill Lynch, and had issued an award in its favor. (Pls.' Reply 3–8.) Merrill Lynch responds that Plaintiffs cannot demonstrate any conduct from which a reasonable person could conclude that Goldblatt was partial to Merrill Lynch, and that in any event, Plaintiffs waived any claim of bias by failing to timely object after the Blackburn and Nabil Awards were disclosed. (Mtn. to Confirm 16–19.)[27]

"Among the circumstances under which the evident-partiality standard is likely to be met are those in which an arbitrator fails to disclose a relationship or interest that is strongly suggestive of bias in favor of one of the parties." *Scandinavian*, 668 F.3d at 72. The Second Circuit, however, has "repeatedly cautioned that we are not 'quick to set aside the results of an arbitration because of an arbitrator's alleged failure to disclose information,'" and has "concluded in various factual settings that the evident-partiality standard was not satisfied because the undisclosed relationship at issue was 'too insubstantial to warrant vacating the award.'" *Id.* at 72 (quoting *Lucent Techs. Inc. v. Tatung Co*., 379 F.3d 24, 28, 30 (2d Cir. 2004)). "[T]he materiality of the undisclosed conflict drives a finding of evident partiality, not

---

[27] "Mtn. to Confirm" refers to Merrill Lynch's motion to correct and confirm the Scherban Award as modified, filed on April 22, 2019. (Doc. 65.)

the failure to disclose or investigate *per se*." *Nat'l Indem. Co. v. IRB Brasil Resseguros S.A.*, 164 F. Supp. 3d 457, 476 (S.D.N.Y. 2016), *aff'd*, 675 F. App'x 89 (2d Cir. 2017).

Here, Plaintiffs' only argument that could potentially meet the evident partiality standard is Goldblatt's failure to disclose the Loesberg Award.[28]  Before the hearing began, Goldblatt disclosed multiple instances in which he had served as an arbitrator in matters involving Merrill Lynch.  (*See, e.g.*, Libowsky Decl. Exs. H, I, K.)  Plaintiffs had information indicating that Goldblatt had served as arbitrator in matters involving Merrill Lynch and had issued two awards favorable to Merrill Lynch, yet Plaintiffs never objected to Goldblatt serving on the Panel.[29] (*See* Libowsky Decl. ¶ 13.)  Thus, any argument that Goldblatt was partial to Merrill Lynch based on these grounds was waived by Plaintiffs.  *See AAOT Foreign Econ. Ass'n (VO) Technostroyexport v. Int'l Dev. & Trade Servs., Inc.*, 139 F.3d 980, 982 (2d Cir. 1998) ("Where a party has knowledge of facts possibly indicating bias or partiality on the part of an arbitrator he cannot remain silent and later object to the award of the arbitrators on that ground.  His silence constitutes a waiver of the objection." (internal quotation marks omitted)); *Meyer v. Kalanick*, 477 F. Supp. 3d 52, 55 (S.D.N.Y. 2020) (same).

Based on the record, it appears that Goldblatt's last disclosure was made on October 3, 2017.  (*See* Libowsky Decl. ¶ 12; Ex. K.)  The Loesberg Award was issued between then and the beginning of the Hearing.  (*Compare* Libowsky Decl. Ex. E. (Loesberg Award issued on July 18,

---

[28] It bears noting that Plaintiffs raise this issue for the first time in their reply.  Arguably, Plaintiffs have waived this argument, *see Estate of Ungar v. Palestinian Auth.*, 451 F. Supp. 2d 607, 611 (S.D.N.Y. 2006) ("as a general rule, courts will not consider arguments raised for the first time in a reply brief"); *In re Weatherford Int'l Sec. Litig.*, No. 11 Civ. 1646 (LAK) (JCF), 2013 WL 12185082, at *2 n.2 (S.D.N.Y. Nov. 19, 2013) (finding Plaintiffs waived argument "by failing to develop it in their opening brief"); however, given that I find that even if such an argument was not waived, it is meritless, I will discuss it briefly.

[29] Although Plaintiffs note that one of the Merrill Lynch matters disclosed by Goldblatt, "is not disclosed in the public database of FINRA," and that it is imperative to find out why it was not disclosed, (Pls.' Reply 2), this is red herring—the matter was disclosed to Plaintiffs, and Plaintiffs did nothing about it.

2018) *with* Roccanova Decl. ¶ 3; Eyvgenyi Aff. ¶ 3 (Hearing began on December 4, 2018)).

Plaintiffs argue that Goldblatt's failure to disclose the Loesberg Award violated FINRA Rule 12405, which requires continuing disclosure of "[a]ny existing or past financial, business, professional, family, social, or other relationships or circumstances with any party, any party's representative, or anyone who the arbitrator is told may be a witness in the proceeding, that are likely to affect impartiality or might reasonably create an appearance of partiality or bias." (Pls.' Reply 5–6.)

As a practical matter, Goldblatt's failure to disclose the Loesberg Award makes sense given that it occurred well after he was appointed Chairman of the Panel and after his updated disclosure was made on October 3, 2017. As a legal matter, Plaintiffs' argument similarly fails. As Defendants point out, the Loesberg Award was "merely an order of expungement in favor of a Merrill Lynch registered representative which was not opposed by the customer who had settled his claims against Merrill Lynch." (Mtn. to Confirm 18.) Other than through conclusory and speculative allegations, Plaintiffs have not shown "the facts that were not disclosed suggest a material conflict of interest." *See Scandinavian*, 668 F.3d at 77 (emphasis omitted). Tellingly, Goldblatt disclosed other arbitrations he presided over involving Merrill Lynch where he did in fact issue monetary awards in Merrill Lynch's favor—unlike the Loesberg Award—yet Plaintiffs never objected. *See IRB Brasil*, 164 F. Supp.3d at 481 (observing that it was unclear why the arbitrator's "25 past involvements with [respondent's] affiliates . . . were acceptable to [claimant], yet this 26th connection . . . was not"). Indeed, in the world of arbitrations, "overlapping service is not only not a circumstance inherently indicative of bias; it is also not unusual." *Scandinavian*, 668 F.3d at 74 n.20; *see IRB Brasil*, 164 F. Supp.3d at 480 ("[T]he Court has not found, any case in which a court has found an arbitrator's past service as an

14

arbitrator to be a basis to vacate an arbitration award.") "[T]he fact that one party loses at arbitration does not, without more, tend to prove that an arbitrator's failure to disclose some perhaps disclosable information should be interpreted as showing bias against the losing party." *Scandinavian*, 668 F.3d at 75, 79 (finding no partiality where arbitrators failed to disclose that they were presiding over a similar arbitration that included the same witness). Based on the record before me, a reasonable person would not conclude that Goldblatt was partial to Merrill Lynch; instead, this is "a classic example of a losing party seizing upon 'a pretext for invalidating the [arbitration] award.'" *Andros Compania Maritima, S.A. v. Marc Rich & Co., A.G.*, 579 F.2d 691, 702 (2d Cir. 1978) (quoting *Commonwealth Coatings Corp. v. Cont'l Cas. Co.* 393 U.S. 145, 151 (1968) (White, J., concurring)).[30] I decline to vacate the Award on these grounds.

### 3. Misconduct

Plaintiffs assert that the Panel engaged in misconduct in violation of section 10(a)(3) of the FAA when Goldblatt failed to disclose the Loesberg Award, as described above, failed to review the transcript of Yevgen's cross-examination transcript, and refused to call two witnesses. (*See* Pls.' Reply 6; Mtn. to Vacate 5–7.) Merrill Lynch responds that there was no improper conduct by the Panel, "let alone misconduct which constitutes a violation of fundamental fairness." (Mtn. to Confirm 20.)

Plaintiffs' recitation of the Panel's alleged misconduct is both conclusory and

---

[30] Assuming *arguendo* that Goldblatt violated FINRA Rule 12405 by not disclosing the Loesberg Award, Plaintiffs' argument still fails. "Federal law establishes the standard for vacatur of an arbitration award by a federal court, not the FINRA rules." *Ploetz for Laudine L. Ploetz, 1985 Tr. v. Morgan Stanley Smith Barney LLC*, 894 F.3d 894, 899 (8th Cir. 2018) (internal quotation marks omitted). Here, the fact that Goldblatt failed to disclose—that he presided over and issued expungement in an arbitration involving Merrill Lynch—is not suggestive of any bias. *See, e.g., Miller v. UBS Fin. Servs. Inc.*, No. 18-CV-8415 (JPO), 2019 WL 1988527, at *7 (S.D.N.Y. May 6, 2019) (refusing to vacate arbitration award where arbitrator arguably violated FINRA disclosure rule but the "deficient disclosures identified [were] not suggestive of any bias on the part of the arbitrators").

disingenuous.  First, with regard to the Loesberg Award, even if Plaintiffs had not waived their argument regarding the failure to disclose the Loesberg Award, this is not the sort of misconduct requiring vacatur.  Plaintiffs have made no tenable argument that Goldblatt's failure to disclose the Loesberg Award constituted a violation of "fundamental fairness."  *See Laidlaw & Co. (UK) Ltd. v. Marinaccio*, No. 19-CV-5246 (RA), 2020 WL 1151323, at *4 (S.D.N.Y. Mar. 10, 2020) ("Vacatur pursuant to Section 10(a)(3) is warranted only where fundamental fairness is violated." (internal quotation marks omitted)).  Therefore, vacatur is not warranted under section 10(a)(3).[31]

Second, regarding Yevgen's transcript, Plaintiffs' witnesses can only attest to what they did or did not see when they could see Goldblatt.  These witnesses' conclusory allegations that "the chairman declined to review" the cross examination "as the audio tapes show" are without support.  (*See* Ruslan Aff. ¶ 8.)  As Merrill Lynch notes, Plaintiffs' witnesses are not aware of whether the Panel reviewed the transcript during the "unusually long" lunch break that day.  (*See* Libowsky Decl. ¶ 6.)  Upon receiving the transcript, Goldblatt stated that "[w]e're not going to take the time now to read this transcript because we have a witness here, and we want to complete [the cross-examination]", (Feb. 11 Tr. 8:3-6); therefore, the Panel's failure to immediately review the transcript is logically explained by the fact that a witness was in the middle of being cross-examined.  Even if the Panel chose not to review the evidence, this is not the sort of misconduct contemplated by section 10(a)(3).  *See Fairchild Corp. v. Alcoa, Inc.*, 510

---

[31] To the extent that Plaintiffs raise the argument that it was improper for the Panel to consider Merrill Lynch's motion to dismiss, (*see* Pls.' Reply 8), this argument was first made in Plaintiffs' reply, and therefore is likely waived.  In any event, this argument is meritless because the portion of the FINRA rule cited by Plaintiffs applies when a motion to dismiss is made prior to the conclusion of a party's case in chief, and a "motion to dismiss made after the conclusion of a party's case in chief is not subject to the[se] procedures."  FINRA Rule 12504(b).  Merrill Lynch's motion to dismiss was made after Plaintiffs' case in chief.  (*See* Feb. 11 Tr. 86) ("CHAIR GOLDBLATT: Claimants rest? MR LAMBERT: Yes.").

F. Supp. 2d 280, 287 (S.D.N.Y. 2007) (Section 10(a)(3) "applies to cases where an arbitrator, to the prejudice of one of the parties, rejects consideration of relevant evidence essential to the adjudication of a fundamental issue in dispute, and the party would otherwise be deprived of sufficient opportunity to present proof of a claim or defense").[32]  Additionally, any allegation that the Panel's decision not to question Yevgen by Skype constituted misconduct, (*see* Ruslan Aff. ¶ 7), likewise fails.  Plaintiffs' counsel informed the Panel that Yevgen could be questioned on Skype, and the Panel declined to do so, (Feb. 11 Tr. 7–8); this was well within the Panel's discretion.

Finally, Plaintiffs' assertion that the Panel refused to call two witnesses, Roccanova and Franco, is a mischaracterization of the record.  Merrill Lynch reserved the right to call Roccanova and Franco in its direct case.  (Libowsky Decl. Ex. P.)  Plaintiffs also reserved the right to call Merrill Lynch witness Roccanova and "[a]ny witness identified by Respondents not mentioned above" in their "direct case."  (Eyvgenyi Aff. Ex. A.)  Plaintiffs, however, chose not to call Roccanova or Franco in their direct case.  (*See* Roccanova Decl. ¶ 7.)  At the close of Plaintiffs' direct case, Merrill Lynch moved to dismiss Plaintiffs' claims, and after considering the motion, the Panel dismissed all of Plaintiffs' claims.  (*See* Feb. 11 Tr. 103–113, 134.)  Merrill Lynch therefore did not have a direct case in which to call either Roccanova or Franco.  The Panel did not refuse to call witnesses; rather, there was no longer a case in which to call them.  I decline to vacate the Award on these grounds.

### 4.  Disregard of the Facts

Plaintiffs also argue throughout their papers that the Panel disregarded certain facts and

---

[32] I observe that Plaintiffs' objection on these grounds seems pretextual—more likely than not, the cross-examination of a plaintiff would be helpful to the defendant, not the plaintiff.  And Plaintiffs have put forth no evidence why even if the Panel did not review the transcript, the failure to do so was harmful to Plaintiffs' case.

evidence. (Mtn. to Vacate 9–13.) "[T]he Second Circuit does not recognize manifest disregard of the evidence as proper ground for vacating an arbitrator's award." *Wallace*, 378 F.3d at 193 (internal quotation marks omitted); *see Bus. Credit & Cap. II LLC v. Neuronexus, Inc.*, No. 1:18-CV-03374 (ALC), 2019 WL 1426609, at *4 (S.D.N.Y. Mar. 29, 2019) ("Clear disregard of the evidence is not a proper basis for vacatur."). "A federal court may not conduct a reassessment of the evidentiary record," and "if a ground for the arbitrator's decision can be inferred from the facts of the case, the award should be confirmed." *Wallace*, 378 F.3d at 193 (internal quotation marks omitted). Although Plaintiffs attempt to disguise their arguments as legal ones, Plaintiffs seek to challenge the Panel's interpretation of the evidence. This is not a proper ground for vacatur. *See NDrive, Navigation Sys. S.A. v. LG Elecs. Inc.*, No. 18-CV-5514 (LAK) (KNF), 2018 WL 8983479, at *6 (S.D.N.Y. Nov. 8, 2018) (finding plaintiff's "challenge [to] the Tribunal's factual findings in connection with the Tribunal's rejection of the [plaintiff's] adverse inference claim, disguised as a manifest disregard of the law argument" "meritless").

### 5. Manifest Disregard of the Law

#### a. Applicable Law

An arbitration award "may be vacated if it exhibits 'a manifest disregard of the law.'" *Wallace*, 378 F.3d at 189 (quoting *Goldman v. Architectural Iron Co.*, 306 F.3d 1214, 1216 (2d Cir. 2002)). Vacatur is warranted on these grounds only where a district court finds "both that (1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether, and (2) the law ignored by the arbitrators was well defined, explicit, and clearly applicable to the case." *Id.* (quoting *Banco de Seguros del Estado v. Mut. Marine Office, Inc.*, 344 F.3d 255, 263 (2d Cir. 2003)). This "clearly means more than error or misunderstanding with respect to the law." *Id.* (citation omitted). "A federal court cannot vacate an arbitral award

merely because it is convinced that the arbitration panel made the wrong call on the law." *Id.* at 190. "On the contrary, the award should be enforced, despite a court's disagreement with it on the merits, if there is a *barely colorable justification* for the outcome reached." *Id.* (citation omitted).

The manifest disregard doctrine has been described as "a doctrine of last resort—its use is limited only to those exceedingly rare instances where some egregious impropriety on the part of the arbitrators is apparent, but where none of the provisions of the FAA apply." *Id.* at 189 (quoting *Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 389 (2d Cir. 2003)). Of note, "between 1960 and the *Duferco* decision in 2003, the Court of Appeals for the Second Circuit has vacated some or all of an arbitral award for manifest disregard of the law in only four of at least forty-eight cases." *Giller v. Oracle USA, Inc.*, No. 11 CIV. 02456 JGK, 2012 WL 467323, at *5 (S.D.N.Y. Feb. 14, 2012), *aff'd*, 512 F. App'x 71 (2d Cir. 2013) (citing *Duferco*, 333 F.3d at 389). "This is because interference with arbitration awards would 'thwart the usefulness o[f] arbitration, making it the commencement, not the end, of litigation.'" *Id.* (quoting *Duferco*, 333 F.3d at 389); *see Wallace*, 378 F.3d at 191 (describing the "sobering odds" of prevailing on a manifest disregard argument).

### b. Application

The Panel granted Merrill Lynch's motion to dismiss on the ground that all claims were barred by the applicable statutes of limitations. (Award, Doc. 64-20 at 4.) Plaintiffs focus on when Plaintiffs were put on notice to the alleged fraud, which included allegedly forged Powers of Attorneys ("POAs"), and appear to argue that the Panel should have found that Plaintiffs did not discover the fraud until 2014. (*See* Mot. to Vacate 9, 15–17.) Plaintiffs also make general arguments that Merrill Lynch is estopped from asserting a statute of limitations defense.

Additionally, Plaintiffs argue that the Panel ignored case law regarding New York's Abandoned Property Law. (*Id.* at 13–14.) Plaintiffs assert that "[a]ll of the above cited statutes and cases were brought to the attention in Claimants' Amended (2ⁿᵈ) Statement of Claim and Pre-Hearing Memorandum. . . . However, the Panel chose to ignore the statutes and case law submitted to it." (*Id.* at 19) (emphasis omitted.) Merrill Lynch responds that Plaintiffs fail to show that the Panel refused to apply or ignored any legal principle; instead, the Panel correctly applied the applicable statute of limitations and law for each of Plaintiffs' claims. (Mtn. to Confirm. 23–29.)

I note first that some of Plaintiffs' arguments go to the underlying merits of their claims, (*see* Mtn. to Vacate 12–14), because the Panel dismissed Plaintiffs' claims on the grounds that they were time barred, not on the merits, I focus on the arguments related to the statute of limitations. Much like the rest of Plaintiffs' motion, Plaintiffs make conclusory statements about the Panel's actions without pointing to specific evidence, and rarely point to the applicable law that the Panel purportedly ignored. Regarding the fraud-related claims, which make up the majority of Plaintiffs' claims, Plaintiffs assert that "the Panel ignored that the statute of limitations were restarted with the discovery on December 21, 2015 of the forged POA." (Mtn. to Vacate 11.) Under New York law, actions based on fraud have a limitations period of the "greater of six years from the date the cause of action accrued or two years from the time the plaintiff or the person under whom the plaintiff claims discovered the fraud, or could with reasonable diligence have discovered it." N.Y. C.P.L.R. § 213(8). "The test as to when a plaintiff should have discovered an alleged fraud is an objective one." *Prestandrea v. Stein*, 692 N.Y.S.2d 689, 689 (2d Dep't 1999). As Plaintiffs themselves acknowledge this requires a fact-specific determination. (*See* Mtn. to Vacate 16.) The Panel's Award explains that "[a]fter Claimants' case-in-chief, Respondent made a Motion to Dismiss based on Claimants' failure to

state a claim and on statute of limitations grounds. Claimants objected to Respondent's Motion and asserted that the statute of limitations had been tolled." (Award, Doc. 64-20 at 4.) Although Plaintiffs attempt to argue that the Panel ignored New York's "discovery rule," which would allow for a two-year statute of limitations, Plaintiffs seem to simply disagree with the ultimate determination reached by the Panel as to when Plaintiffs were put on notice to the alleged fraud. This does not come close to meeting the stringent standard required to vacate the Award.[33]

I agree with Merrill Lynch that the Panel's dismissal of the remaining counts was similarly justified on statute of limitations grounds, as the accounts at issue closed in October 2001. (*See* Mtn. to Confirm 28–29); N.Y. C.P.L.R. § 213(2) (six-year statute of limitations for breach of contract claim); *IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 12 N.Y.3d 132, 139 (N.Y. 2009) (three-year statute of limitations for breach of fiduciary duty claim where plaintiff seeks monetary remedy and six year-statute of limitations where an allegation of fraud is essential to claim or plaintiff seeks equitable relief); *Bethune v. Mount Sinai Beth Israel Med. Ctr.*, 173 F. Supp. 3d 10, 11 (S.D.N.Y. 2016) (three-year statute of limitations for negligence claim); *Rusyniak v. Gensini*, 629 F. Supp. 2d 203, 235 (N.D.N.Y. 2009) ("statute of limitations for civil conspiracy is the same as that for the underlying tort" (internal quotation marks omitted)); *Torrance Constr., Inc. v. Jaques*, 8 N.Y.S.3d 441 (3d Dep't 2015) (six-year statute of limitations for money had and received claim); *Gaidon v. Guardian Life Ins. Co. of Am.*, 96 N.Y.2d 201, 210 (N.Y. 2001) (three-year statute of limitations for claims under General Business Law § 349); *Morelli v. Weider Nutrition Grp., Inc.*, 712 N.Y.S.2d 551 (1st Dep't 2000) (same).

---

[33] It bears noting that the Panel's Award stated only that "[t]he Panel determined that all claims were time barred, having been filed at between 13 and 18 years after the alleged claims arose." (Award, Doc. 64-20 at 4.) Plaintiffs' arguments regarding the Panel's application of the law therefore are based in large part on speculation. *See Chester v. Lynch*, No. 12 Civ. 3078(GBD), 2014 WL 2111690, at *4 (S.D.N.Y. May 13, 2014) ("Speculation cannot establish a ground for vacatur.").

Plaintiffs asserted a claim against Merrill Lynch under section 300 of New York's

Abandoned Property Law, and alleged that "Merrill Lynch failed to comply with § 302

'Publication of list of abandoned property', which resulted in otherwise avoidable damages."

(*See* Sec. Amend. Claim ¶¶ 167–170.)  Pursuant to N.Y. C.P.L.R. § 214(2), "an action to recover

upon a liability, penalty or forfeiture created or imposed by statute" must be commenced within

three years.  Under New York's catch-all provision, "an action for which no limitation is

specifically prescribed by law" must be commenced within six years.  N.Y. C.P.L.R. § 213(1).

Plaintiffs state that the Panel ignored section 1400 of New York's Abandoned Property Law,

titled "Statutes of limitations not a bar," which provides:

> The expiration of any period of time specified by law, during which an action or
> proceeding may be commenced or enforced to secure payment of a claim for money
> or recovery of property, shall not prevent any such money or property from being
> deemed abandoned property, nor affect any duty to file a report required by this
> chapter or to pay or deliver to the state comptroller any such abandoned property;
> and shall not serve as a defense in any action or proceeding by or on behalf of the
> state comptroller to compel the filing of any report or the payment or delivery of
> any abandoned property required by this chapter or to enforce or collect any penalty
> provided by this chapter.

N.Y. Aband. Prop. Law § 1400 (McKinney).  Plaintiffs' reliance on this section is

misplaced.

Plaintiffs are not seeking that the funds be declared abandoned property; instead,

Plaintiffs seek damages.  (*See* Sec. Amend. Claim ¶ 175(H)) (requesting that the Panel

"[a]ward damages based on Merrill Lynch's violation of New York's Abandoned

Property Law and Deceptive Acts and Practices Law").  As another court in this District

has recognized, where the relief sought is "effectively an artfully pled request for

enforcement of payment . . . it falls outside of the scope of § 1400 because it goes beyond

having the funds 'deemed abandoned property,'" and therefore would be barred by the

applicable statute of limitations.  *Han v. Standard Chartered Bank*, No. 01 CIV. 3675

(JSM), 2002 WL 1586883, at *3 (S.D.N.Y. July 17, 2002).  Additionally, "[t]he § 1400

bar does not activate until the property escheats to the state . . . . It is only when the funds

escheat to the state that the bar of the statute of limitations is removed."  *Id.*  Plaintiffs do

not allege that Merrill Lynch turned over the funds to the state of New York; rather, they

assert the exact opposite.  (*See* Mtn. to Vacate 14–15.)  The Panel therefore did not

disregard the law in finding that the abandoned property claim was time barred.[34]  *See*

*Han*, 2002 WL 1586883, at *3 (holding plaintiff's claim time barred and that plaintiff

could not "avail herself of § 1400 because the funds ha[d] not been turned over to the

state").[35]  In sum, I find that the Panel did not manifestly disregard the law, and refuse to

vacate the Award on this grounds.

### B.  *Motion to Confirm and Correct*

Given that I do not find that the Scherban Award should be vacated on the grounds

asserted by Plaintiffs, I now consider Merrill Lynch's motion to correct and confirm the

Scherban Award as modified.  Merrill Lynch explains that the Case Summary portion of the

Award erroneously describes the claims that were ordered to arbitration before FINRA and those

claims which I found were not subject to arbitration.  (Mtn. to Confirm 30.)  Specifically, the

section titled "Other Issues Considered and Decided" states that:

By  Order  dated  September  30,  2015,  the  U.S.  District  Court  for  the  Southern

---

[34] Additionally, Plaintiffs' citation to *In re Application of N.Y. Univ.*, 63 N.Y.S.2d 556 (3d Dep't 1946) is inapposite as it concerned funds that had already been turned over to the state.

[35] I also note that the Panel had numerous other "colorable justifications" for dismissing this claim, including that the New York Abandoned Property Law may not create a private right of action, *see Han*, 2002 WL 1586883, at *3– 4, and that Merrill Lynch is not subject to section 300 because it is not a "banking organization."  Although Plaintiffs reference that Merrill Lynch may be treated as brokers, subject to New York Abandoned Property Law §503, Plaintiffs offer nothing more than a conclusory assertion that the Panel "refused to apply the statutory law." (*See* Mtn. to Vacate 15).  This is insufficient to meet the "sobering odds" that Plaintiffs must overcome.  *See Wallace*, 378 F.3d at 191.

District of New York granted Respondent's Motion to Compel Arbitration as to all Claimants other than Ruslan E. Chtcherban. The District Court subsequently denied Respondent's Motion to Compel Arbitration against Ruslan E. Chtcherban. Respondent Ruslan E. Chtcherban is a Claimant in this action solely as a lawful heir of Yevgenyi A. Scherban.

(Award, Doc. 64-20 at 4.)  In my two orders, however, I denied Merrill Lynch's motion to compel arbitration of Eyvengi's claims related to his Merrill Lynch account, (Doc. 31), and subsequently granted Merrill Lynch's motion to compel arbitration of Ruslan's claims related to his Merrill Lynch account, (Doc. 49).  Merrill Lynch asserts that this mistake constitutes a "scrivener's error" that is "non-substantive," but that should be corrected so that is it is consistent with my prior orders.  (Mtn. to Confirm 30.)  Plaintiffs do not address this issue.

"Remand should not be granted where the court can resolve any alleged ambiguities in the award by modification," *Fischer v. CGA Comput. Assocs., Inc.*, 612 F. Supp. 1038, 1041 (S.D.N.Y. 1985), and an award "must be confirmed . . . where the true intent of the arbitrator is apparent," *Blue Tee Corp. v. Koehring Co.*, 808 F. Supp. 343, 347 (S.D.N.Y. 1992), *aff'd*, 999 F.2d 633 (2d Cir. 1993) (internal quotation marks omitted).  "Remand should be granted sparingly because of the likelihood that 'the arbitrator will believe that a remand is equivalent to retrial with an expectation of an opposite result the second time around.'"  *Fischer*, 612 F. Supp. at 1041 (quoting *Randall v. Lodge No. 1076*, 648 F.2d 462, 468 (7th Cir. 1981)).  As Plaintiffs explained in their Amended (Second) State of Claim, "Evgenyi is Claimant in th[e] arbitration because he is the lawful heir of Scherban and has a claim to his estate.  Evgenyi is joined in this arbitration matter, because he is a real party in interest on the claims made by the Estate of, at a minimum, Scherban."  (Sec. Amend. Claim ¶ 3.)  Regarding Ruslan, Plaintiffs stated that "[t]o the extent Rouslan's claim based on his account at Merrill Lynch is established to be subject to arbitration, he is a proper Claimant in this matter not only as an heir, but in his own right."  (*Id.* ¶

4.)  Here, there does not seem to be an ambiguity, but rather it appears that the Panel confused

Ruslan and Evgeni when describing my prior orders, and that the Panel intended to dismiss all of

Ruslan's individual claims.  *Cf. Hyle*, 198 F.3d at 371 (finding remand to arbitrator proper where

the award read in conjunction with defendant's undisputed position as to which respondent

defendant was seeking damages and an injunction from created an ambiguity as to which

respondents the arbitrator intended to award damages and an injunction against).  This seems to

constitute "an evident material mistake in the description of any person" or an "imperfect[ion] in

matter of form not affecting the merits of the controversy" which I may correct pursuant to

section 11 of the FAA.  9 U.S.C. § 11(a), (c).

In conclusion, because I find no grounds to vacate or remand the Award, I correct the

Award by replacing the second paragraph in the "Other Issues Considered and Decided" section

on page 3 of the Award[36] with the following:

> By Order dated September 30, 2015, the U.S. District Court for the Southern
> District of New York granted Respondent's Motion to Compel Arbitration in part,
> and denied it as to the individual claims of Claimant Eyvgenyi Scherban.  The
> District Court subsequently granted Respondent's Motion to Compel Arbitration
> against Ruslan E. Chtcherban.  Respondent Eyvgenyi Scherban is a Claimant in
> this action solely as a lawful heir of Yevgenyi A. Scherban.

I confirm the Award as modified.

**V.    Conclusion**

For the foregoing reasons, Plaintiffs' motion to vacate the Scherban Award is DENIED.

Defendant's motion to correct the Scherban Award and confirm as modified is GRANTED.  The

Clerk of Court is respectfully directed to close the open motions at docket entries 54 and 62.

---

[36] Page 3 of the Award corresponds with Doc. 64-20, ECF page number 4.

SO ORDERED.

Dated: June 22, 2021
      New York, New York

                                     Vernon S. Broderick
                                     United States District Judge