ALEXANDER M. DUDELSON (AD4809)
26 Court Street - Suite 2306
Brooklyn, New York 11242
(718) 855-5100
Email: adesq@aol.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
EYVGENYI E. SCHERBAN,                    Case No.: 14-cv-06312 (VSB) (OTW)

                    Plaintiff,        AMENDED COMPLAINT

      -against-

MERRILL LYNCH; a/k/a MERRILL LYNCH CO;
a/k/a MERRILL LYNCH PIERCE FENNER
SMITH; BANK OF AMERICA N.A., JEFFRY
SCHNEIDER, and IGOR NIKITIN,

                    Defendants.
-------------------------------------------------------------X

## STATEMENT OF THE CASE:

1.     This action is for recovery of all and any assets in accounts titled to the plaintiff, or for his benefit, that were fraudulently transferred from the investment bank entity Merrill Lynch. In 2009, Merrill Lynch was acquired by Bank of America N.A., which completed the merger of this investment bank into that national bank by 2013. Bank of America is currently responsible for the assets and records held on the accounts opened by clients with Merrill Lynch before the merger.

## THE PARTIES:

2.     Plaintiff Evgenyi E. Scherban, a/k/a Evgueni Chtcherban, a/k/a Evgueni Scherban ("Evgenyi") is the eldest of the three children between Yevgenyi A. Scherban and Tatiana

Nikolaevna Scherban.  Evgenyi is a resident and citizen of Ukraine.

3. Defendant Merrill Lynch, a/k/a Merrill Lynch Co., a/k/a Merrill Lynch Pierce Fenner & Smith, a/k/a Merrill Lynch Wealth Management is an investment bank, headquartered in New York.  Currently it is named Merrill Lynch Wealth Management as the division of Bank of America.  It is headquartered at 4 World Financial Center, New York, New York. Merrill Lynch agreed to be acquired by Bank of America in 2008.  By 2013 it was merged into Bank of America Corporation, although certain Bank of America subsidiaries continue to carry the Merrill Lynch name, including the name of the broker-dealer Merrill Lynch, Pierce, Fenner & Smith.  Merrill Lynch is Defendant in this action as a garnishee, because it has held the accounts and assets to which Plaintiff herewith has claims.

4. Defendant Jeffry Schneider is an individual residing in the State of Texas.

5. Defendant Igor Nikitin is an individual residing in the State of Florida.

JURISDICTION:

6. This Court has jurisdiction pursuant to 28 U.S.C. § 1332.

7. Plaintiff is, for purposes of diversity of citizenship, a citizen of Ukraine.

8. Defendants are citizens of the State of New York, Texas and Florida.

9. There exists a complete diversity of citizenship in this matter.

10. This Court has subject matter jurisdiction over the parties because of the diversity of citizenship within the meaning of 28 U.S.C. § 1332.  The claim exceeds $75,000.00, the statutory minimum.

11. This Court has jurisdiction over the Defendants, because they have conducted business in New York.

12. The subject investment accounts were opened at the relevant times at the branch of Merrill Lynch at the address: Grand Central Financial Complex 200, Park Avenue, Suite 100, New York, New York 10017.

13. Venue is proper in the Southern District of New York. Namely, the bank Defendants have branches in the proximity of the U.S. District Court for the Southern District of New York, in Manhattan.

## STATEMENT OF FACTS:

14. After Ukraine became independent in 1991, it started to open up to the free market, providing business opportunities.

15. Yevgenyi A. Scherban, the plaintiff's father, obtained his education at the technical college in Donetsk, Ukraine. Then he continued his education at the Donetsk Polytechnical Institute (an equivalent of a university-level education). In the early 1990s, Yevgenyi A. Scherban set up businesses, of which the largest entities were Aton Corp., Amdon Tsentr SP, Financist SP, Gefest SP, DCC SP Industrialnyi Soyuz Donbassa.

16. In March of 1994, Yevgenyi A. Scherban was elected to the Rada of Ukraine (the national legislature), upon the first parliamentary election in the newly independent country. He was also a member of the Executive Committee of the Liberal Party of Ukraine.

17. Yevgenyi A. Scherban became one of the richest business men in Ukraine. According to various estimates, the total for the assets under Yevgenyi A. Scherban's control surpassed $100 million.

18. Yevgenyi A. Scherban and his wife Nadejda Nikitina ("Nikitina") were murdered on November 3, 1996 in Donetsk, Ukraine, by two gunmen. The murders were subject to

extended criminal proceedings in Ukraine.  In 2002, eight men belonging to the gang that carried out the murders were tried.  All of them were found guilty, with three of the convicts receiving life sentences.

19. In the mid-1990s, prior to his death, Yevgenyi A. Scherban set up several investment accounts at Defendant Merrill Lynch, for himself and for the certain members of his family.

20. The accounts were set up with the private client group 1011730, at the branch with the address: Grand Central Financial Complex, 200 Park Avenue, Suite 100, New York, New York 10017.

21. The representative of Defendant Merrill Lynch for working with private client group 1011730 in New York was Jacqueline B. Spiro.

22. The financial consultant of Defendant Merrill Lynch for working with private client group 1011730 in New York was Defendant Jeffry Schneider.

23. The relationship between the Yevgenyi A. Scherban family and Defendant Merrill Lynch was based on a diversified products.  For example, in April of 1994,Yevgenyi A. Scherban applied and received a loan from Defendant Merrill Lynch for $1.3 million, mortgaging a house in Boca Raton, Florida.  The purpose of that loan was taken for purposes of establishing a credit score and a diverse working relationship with Defendant Merrill Lynch.  The loan was paid off in or about 1995.

24. According to the internal accounting documents, on or about September 7, 1994, Yevgenyi A. Scherban made a wire transfer of $2,000,000.00 to his account called 'savings,' presumably at Defendant Merrill Lynch, as he did not have any other accounts yielding interest or

dividends.

25. As of September 7, 1994, there was a balance of $2,386,600.58 between approximately seven accounts.

26. In or about 1994, Defendant Merrill Lynch's own Policies and Procedures, required an upfront investment of $100,000.00 for opening each CMA account for the head and members of the family.

27. In addition to the accounts in the names of the deceased, Yevgenyi A. Scherban set up accounts with the defendants for the Plaintiff, namely Account No. 85D-14215.

28. The above captioned action was initially commenced by plaintiff, Ruslan E. Scherban, and Yevgen Scherban, on August 8, 2014, seeking, amongst other things, monies relating to the decedents Yevgenyi A. Scherban and Nikitina's accounts held by the Defendants.

29. On September 30, 2015, the claims of the estates, amongst others were referred to FINRA arbitration.

30. The Defendants' Merrill Lynch and Bank of America, N.A.'s motion to compel arbitration of the plaintiff's claims were denied, because the moving Defendants did not provide an arbitration agreement related to him.

31. On September 30, 2015, the above captioned matter was stayed pending the FINRA arbitration.

32. During the pendency of the FINRA arbitration, certain Powers of Attorney relating to the Scherban family accounts were exchanged by the defendants.

33. As a result of the discovery exchange in the FINRA arbitration, it was discovered that on January 15, 1996, Defendant Merrill Lynch illegally registered three fraudulent Powers of

Attorney, allowing a certain third party, Defendant Igor Nikitin to operate the accounts of Yevgenyi A. Scherban, Plaintiff, and Plaintiff's brother Ruslan E. Scherban.

34. Defendant Igor Nikitin was a free-lance associate of Yevgenyi A. Scherban. Yevgenyi A. Scherban did not speak English and relied on Defendant Igor Nikitin to assist him with certain business opportunities in the United States.

35. Despite a resemblance of the last names, Defendant Igor Nikitin was not a relative and had nothing to do with Nikitina.

36. All three fraudulent Powers of Attorney were missing crucial information and the purported signatures of these three persons did not resemble the true signatures of the account holders.

37. None of these three fraudulent Powers of Attorney contained any notarized signatures.

38. Despite the safeguards required from financial institutions, the Merrill Lynch defendants failed to follow, or comply with, the law concerning certification of signatures, including but not limited to New York's Executive Law § 135. 'Powers and duties; in general; of notaries public who are attorneys at law.'

39. The scheme of the fraudulent Powers of Attorney was contrary to defendants own internal regulations, to wit: "The Firm does not encourage power of attorney accounts. When the client wants to appoint an agent, a written authorization and prior approval of your RVP/RM. must be obtained."

40. The Merrill Lynch Defendants were obligated to have a purported signor for each Power of Attorney appear at its branch and sign such documents in person.

-6-

41. According to customs records, on January 11, 1996, Yevgenyi A. Scherban and Nikitina returned to Ukraine. Days later, on January 18, 1996, Yevgenyi A. Scherban had a 50-year birthday party and he, Plaintiff and Ruslan E. Scherban participated in its preparation in Donetsk, Ukraine.

42. After that birthday party in Donetsk, as records show, Yevgenyi A. Scherban, Nikitina, Plaintiff and Ruslan E. Scherban went on a trip to Thailand.

43. Defendant Merrill Lynch's own regulations concerning the Powers of Attorney required that a ". . .Resident Vice President/Resident Manager (RVP/RM) approval is required for a General POA authorization," and "due to broad powers of a General POA, its use is discouraged."

44. The Merrill Lynch Defendants participation in entertaining the fraudulent and void Powers of Attorney, with forged signatures without notarization, in a civil conspiracy scheme, allowed subsequent confiscation of funds from plaintiff accounts and those of his family.

45. Upon information and belief, Defendant Jeffry Schneider, as the financial advisor holding a position of a Vice President at that branch, was involved in that scheme with Defendant Igor Nikitin.

46. The fraudulent scheme of fabricated Powers of Attorney was against the Merrill Lynch Defendants other regulations, to wit:

> Before orders may be entered in an account by any person other than the owner, a power of attorney must be executed by the customer, without change or alteration. The Corporation does not encourage the use of powers of attorney (refer to Sections 02.2.16.1 and 02.2.16.2). . . The Corporation does not want to accept such authority from customers except in those instances where the agent or attorney is a member of the immediate family of the customer. It is necessary to have an indication at the bottom of the form as to the family relationship between

the agent and the customer.

47. Furthermore, the conduct of the Defendant Merrill Lynch branch in this matter was contrary to its own policy restrictions to protect clients' accounts, to wit: "A Power of Attorney - General (Code 119) permits trading and withdrawing of funds. Offices may accept all instructions from the holders to deliver funds and securities in the names of persons other than the customer or in the name of the agent himself, <u>except</u> that instructions will not be accepted from the agent to transfer funds or securities from the principal's account to the agent's account." (The underlining is retained from original text).

48. In the event the Defendant Merrill Lynch branch illegally chose to treat the Scherban family accounts as discretionary, its other regulations were not complied with, to wit: "Once the approval of the RVP/RM has been obtained, copies of the power of attorney and memo of the customer's interview will be forwarded to the office's Regional Director, or his appointed designee, whose approval is necessary before the account will be accepted on behalf of the Corporation."

49. Thereafter, a series of fraudulent transfers were made from the Scherban accounts through the use of the forged Powers of Attorney.

50. For example, on January 22, 1996, $100,000.00 was transferred out of the plaintiff's Account No. 85D-14215.

51. In April of 1996, Yevgenyi A. Scherban returned to New York, without notification, with what appeared to be an inspection visit, detecting some irregularities in the Defendant Merrill Lynch's accounts. Yevgenyi A. Scherban, his assistant, and Defendant Igor Nikitin went to the Defendant Merrill Lynch branch and met with Defendant Jeffry Schneider to

discuss suspect transactions. Defendant Jeffry Schneider promised to undertake a investigation.

52. On April 17, 1996, Yevgenyi A. Scherban and Defendant Igor Nikitin made an agreement concerning what appeared to be illegal takings from the accounts of the Scherban family. The signatures on the agreement between Scherban and Defendant Igor Nikitin were notarized.

53. The April 17, 1996 agreement cited five unauthorized transactions or takings as follows: $155,000.00; $170,000.00; $185,000.00; $289,000.00 and $100,000.00, for the total of $899,000. The agreement provided for the schedule of repayments.

54. The agreement stated in its relevant part: "If funds are returned according to or ahead of schedule, Mr. E.A. Chtcherban indemnifies and holds harmless all and any of the following persons or entities and will not file a suit against them in order to recover the above mentioned funds in the court of law: 1. Mr. I. Nikitin, 2. Mr. J. Schneider, vice president of Merrill Lynch, 3. Merrill Lynch.  However, Mr. Chtcherban reserves the right to gather all the necessary evidence to possibly file a criminal suit against the above mentioned in case of the breach of this agreement."

55. None of these amounts, taken from the Scherban family accounts were returned to the accounts either before or after Yevgenyi A. Scherban's murder on November 3, 1996.

56. Defendant Merrill Lynch failed to follow its own regulations, spelled out in its own internal memoranda: "When a power of attorney exists, you must know both the principal and the agent. IT IS YOUR RESPONSIBILITY TO UPDATE ALL REQUIRED DOCUMENTS FOR THE ACCOUNT AS CHANGES OCCUR. OUT-OF-DATE INFORMATION CAN UNDERMINE OUR DEFENSE IF COMPLAINTS OR LAWSUITS ARISE." (Capital letters

retained from original document).

57. During this same time as the Scherban agreement with Defendant Igor Nikitin, Defendant Igor Nikitin tendered notes to Defendants Merrill Lynch, and entered into other side agreements, to cover unpaid stock purchases that were made by Defendant Jeffry Scherban on behalf of other clients. Said clients were introduced to Defendant Merrill Lynch and Jeffry Scherban by Defendant Igor Nikitin.

58. In or about December of 1996, the Plaintiff learned of an assassination plot of his life. The Plaintiff and his pregnant wife were relocated from Donetsk to Moscow.

59. In connection with Yevgenyi A. Scherban's murder, Yevgenyi A. Scherban's office was secured by law enforcement and his documents were seized.

60. On repeated occasions over the years following November of 1996, the plaintiff, and his brother, attempted to approach the representatives of the Merrill Lynch Defendants, in order to find out about the accounts.

61. The Merrill Lynch Defendants never acknowledged the existence of any of the Scherban family accounts to the Plaintiff or his siblings.

62. Plaintiff, a resident and citizen of Ukraine, was unable to renew his visa to the United States.

63. Upon information and belief, within months of the death of Yevgenyi A. Scherban and Nikitina, Defendant Merrill Lynch forced Defendant Jeffry Schneider to resign due to, amongst other things, violation of the "know your client rule" and for making purchases without receipt of client funds.

64. At the relevant times, the Merrill Lynch Defendants were acting in bad faith with

regard to these accounts and family assets. Defendant Merrill Lynch improperly used the fact that two account holders, Yevgenyi A. Scherban and Nikitina, passed away on one day, the junior son was a minor, in a high school, and the two other sons encountered issues with U.S. entry visas, in order to travel to the United States to make personal inquiries.

COUNT I.
CIVIL CONSPIRACY

65. Plaintiff incorporates by reference allegations in the preceding paragraphs 1 to 64 as if plead again with the same force and effect.

66. The Defendants, acting in concert and with a common purpose, engaged in a civil conspiracy to defraud and misappropriate funds from the accounts of Plaintiff.

67. The conspiracy commenced with the fraudulent execution and use of Powers of Attorney by Defendant Igor Nikitin, a non-relative and freelance associate of Yevgenyi A. Scherban, facilitated by Defendant Jeffry Schneider, Vice President and financial consultant at Defendant Merrill Lynch's Grand Central Financial Complex branch.

68. Despite Defendant Merrill Lynch's own internal policies discouraging and restricting the use of Powers of Attorney without proper verification and approval, defendants conspired to accept and act upon these forged documents, thereby allowing unauthorized withdrawals from the Plaintiff's account.

69. This conduct not only violated the established protocols and guidelines of Defendant Merrill Lynch, but also contravened New York state law concerning the certification of signatures, as detailed in Executive Law § 135.

70. The conspiracy was further compounded by the Merrill Lynch Defendants failure to rectify the unauthorized transactions or return the misappropriated funds, despite Plaintiff's repeated attempts over the years to seek redress and clarification regarding the status of the accounts.

71. As a direct result of Defendants' concerted actions, plaintiff has suffered substantial financial losses and continue to be deprived of his rightful assets.

72. Plaintiff is entitled to relief under the present Count based on civil conspiracy.

## COUNT II.
## FRAUD/FRAUDULENT MISREPRESENTATION & FORGERY

73. Plaintiff incorporates by reference allegations in the preceding paragraphs 1 to 72 as if plead again with the same force and effect.

74. The Merrill Lynch Defendants, through their financial consultant Defendant Jeffry Schneider, and with knowledge of the requirement for rigorous authentication and verification processes, engaged in fraudulent conduct by knowingly accepting and implementing three forged Powers of Attorney purportedly executed by Plaintiff, allowing unauthorized access to plaintiff's account.

75. These fraudulent documents, notarized without the required signatures of the account holders and in contravention of Defendant Merrill Lynch's internal policies and New York state law, enabled unauthorized withdrawals from Plaintiff's account.

76. Defendant Jeffry Schneider, despite being aware of the irregularities, failed to undertake adequate investigation or remedial action following Plaintiff's father's detection of

suspicious transactions and subsequent agreement with Defendant Igor Nikitin to address the issue.

77. Defendants' actions were intentionally deceptive and designed to mislead Plaintiff regarding the security and integrity of his family's accounts, causing substantial financial harm and continuing distress to Plaintiff.

78. These forged documents, which lacked the required notarized signatures of the account holders and were contrary to Defendant Merrill Lynch's internal policies and New York state law, facilitated unauthorized withdrawals from Plaintiff's account.

79. Defendant Jeffry Schneider, despite being aware of the irregularities and discrepancies in the signatures, failed to conduct proper verification or due diligence, thereby contributing to the acceptance and implementation of these fraudulent instruments.

80. Defendants' actions were deliberate and intended to deceive plaintiff regarding the authenticity and validity of the Powers of Attorney, resulting in substantial financial losses and ongoing harm to Plaintiff.

81. As a result of Defendants' fraudulent scheme and subsequent failure to rectify the unauthorized transactions, plaintiff has suffered significant financial losses and seeks restitution and punitive damages as may be just and proper under the law.

82. Additionally, as a direct consequence of Defendants' forgery and subsequent failure to rectify the unauthorized transactions, Plaintiff seeks damages, including restitution and punitive measures, commensurate with the severity and impact of Defendants' wrongful conduct.

COUNT III.

RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT ("RICO")

83. Plaintiff incorporates by reference allegations in the preceding paragraphs 1 to 72 as if plead again with the same force and effect.

84. Defendants, acting in concert through a pattern of racketeering activity as defined under 18 U.S.C. § 1961, engaged in a scheme to defraud Plaintiff and his family of their rightful assets held at Merrill Lynch through a series of fraudulent and deceptive practices.

85. Beginning with the knowing and intentional acceptance and implementation of three forged Powers of Attorney by defendant Jeffry Schneider, a Vice President and financial consultant at Defendant Merrill Lynch's Grand Central Financial Complex branch, Defendants facilitated unauthorized access to Plaintiff's account, resulting in the misappropriation.

86. Despite knowledge of the forged documents and their fraudulent nature, defendants failed to undertake proper verification or investigation, thereby allowing the unlawful withdrawals to occur.

87. This pattern of racketeering activity, consisting of multiple instances of mail fraud, wire fraud, and financial fraud, directly harmed plaintiff and constituted a violation of 18 U.S.C. § 1962(c).

88. Moreover, the Merrill Lynch Defendants' actions, including their failure to remedy the unauthorized transactions despite Plaintiff's repeated inquiries and attempts to rectify the situation, demonstrate a pattern of racketeering activity aimed at defrauding Plaintiff of his rightful assets.

89. As a result, Plaintiff seeks treble damages, injunctive relief, and all other appropriate relief under 18 U.S.C. § 1964 for Defendants' violations of "RICO".

## COUNT IV.
## BREACH OF FIDUCIARY DUTY

90. Plaintiff incorporates by reference allegations in the preceding paragraphs 1 to 89 as if plead again with the same force and effect.

91. The Merrill Lynch Defendants, in their capacity as financial advisors and custodians of Plaintiff's accounts at Merrill Lynch, owed a fiduciary duty to Plaintiff, including the duty of utmost good faith, loyalty, and care in managing and safeguarding their financial interests.

92. Despite these fiduciary obligations, the Merrill Lynch Defendants, through their financial consultant Defendant Jeffry Schneider, breached their fiduciary duties by knowingly accepting and implementing three forged Powers of Attorney purportedly executed by Plaintiff.

93. These forged documents, which lacked the required notarized signatures and were executed without proper authorization, facilitated unauthorized from Plaintiff's account.

94. Defendant Jeffry Schneider, as Vice President and financial consultant, had actual knowledge of the irregularities and discrepancies in the Powers of Attorney, but failed to conduct proper due diligence or take corrective action to protect Plaintiff's financial interests.

95. Defendants' breaches of fiduciary duty were intentional, willful, and in conscious disregard of Plaintiff's rights, resulting in substantial financial losses and ongoing harm to Plaintiff.

96. As a direct consequence of Defendants' breaches, Plaintiff seeks damages equal to the full value of the misappropriated funds, together with consequential damages, punitive damages, costs, and any further relief as this Court deems just and proper.

## COUNT V.
## CONVERSION

97. Plaintiff incorporates by reference allegations in the preceding paragraphs 1 to 96 as if plead again with the same force and effect.

98. Defendants, without lawful authority or Plaintiff's consent, wrongfully exercised dominion and control over Plaintiff's funds held at Merrill Lynch.

99. Specifically, the Merrill Lynch defendants, through their financial consultant Jeffry Schneider, facilitated and permitted unauthorized withdrawals from Plaintiff's account

100. These withdrawals were executed pursuant to a forged Power of Attorney and subsequently accepted and acted upon by the Merrill Lynch Defendants, despite knowledge of the irregularities and lack of proper verification.

101. Defendant Jeffry Schneider, in his capacity as Vice President and financial consultant, failed to adhere to Merrill Lynch's internal policies requiring stringent verification procedures for such transactions, thereby facilitating the conversion of Plaintiff's funds for Defendants' benefit.

102. As a direct result of Defendants' wrongful acts, Plaintiff has been deprived of the use and benefit of his rightful funds, causing substantial financial harm and distress.

103. Plaintiff seeks damages equal to the full value of the converted funds, together with prejudgment interest, costs, and any further relief deemed just and proper by this Court.

## COUNT VI.
## CLAIM UNDER TURNOVER STATUTES

104. Plaintiff incorporates by reference allegations in the preceding paragraphs 1 to 103 as if plead again with the same force and effect.

105. Upon information and belief, interest has accrued on Plaintiff's accounts since November 3, 1996.

106. The claims of Plaintiff are governed in New York, inter alia, by NY CPLR § 5201, et. seq.

107. Plaintiff have lawful claims against all named Defendants herein as to any and all assets held on the accounts of Plaintiff's father and Nikitina, inclusive any interest accrued since November 3, 1996.

## COUNT VII.
## ACCOUNTING

108. Plaintiff incorporates by reference the allegations in the preceding paragraphs 1 to 107 as if plead again with the same force and effect.

109. Plaintiff should be able to obtain any and all documentation related to the investment accounts.

110. Despite Plaintiff's demand, he was unable to obtain from the Merrill Lynch Defendants the complete statements of his accounts.

111. Plaintiff is entitled to relief herein against all the Merrill Lynch Defendants jointly

based on Accounting. Defendants should deliver to Plaintiff all statements and other records concerning all the above-mentioned accounts, without limitation as to any accounts in the name of Plaintiff.

## JURY DEMAND

112.    Plaintiff demands trial by Jury.

WHEREFORE, respectfully requests that this Court grant the following relief:

a.    Damages for the amounts transferred out of the plaintiff's accounts, which are in excess of $75,000.00, jointly against all Defendants;

b.    Treble and Punitive damages;

c.    An award of prejudgment and post judgment interest;

d.    An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

e.    Such other, further, and different relief as this Court deems just and proper.

Dated: Brooklyn, New York
       July 26, 2024

*/s/ Alexander M. Dudelson*
ALEXANDER M. DUDELSON, ESQ. (AD4809)
*Attorney for Plaintiff*
26 Court Street - Suite 2306
Brooklyn, New York 11242
(718) 855-5100