UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
ESTATE OF YEVGENYI A. SCHERBAN,                Case No.: 14-cv-6312 (VSB)(OTW)
ESTATE OF NADEJDA NIKITINA,
EYVGENYI E. SCHERBAN, RUSLAN E.
SCHERBAN, and YEVGEN E. SCHERBAN,

                    Plaintiffs,

          -against-

MERRILL LYNCH a/k/a MERRILL LYNCH
CO. a/k/a MERRILL LYNCH PIERCE
FENNER SMITH; BANK OF AMERICA
N.A. and DOES 1-10,

                    Defendants.
--------------------------------------------------------X

---

## MEMORANDUM OF LAW IN SUPPORT OF MOTION
## FOR LEAVE TO AMEND COMPLAINT

---

ALEXANDER M. DUDELSON, ESQ. (AD4809)
*Attorney for Plaintiff*
26 Court Street - Suite 2306
Brooklyn, New York 11242
(718) 855-5100

**Table of Contents**

Preliminary Statement..................................................................................................................1

Procedural History......................................................................................................................1

Statement of Facts.......................................................................................................................3

Argument......................................................................................................................................9

     I.       PLAINTIFF HAS SATISFIED THE RULE 16 ANALYSIS...............................12

     II.      THERE IS AN ABSENCE OF BAD FAITH, UNDUE DELAY,
              FUTILITY OR UNDUE PREJUDICE TO THE
              NON-MOVING PARTIES...........................................................................14

           A.     Undue Delay and Undue Prejudice............................................................14

           B.     Plaintiff's Claims are not Futile................................................................16

Conclusion..................................................................................................................................16

## Table of Authorities

Statutes:

18 U.S.C. § 1961.................................................................................................12

Fed. R. Civ. P. 12................................................................................................9

Fed. R. Civ. P. 15.............................................................................................9, 13

Fed. R. Civ. P. 16...............................................................................................10

Fed. R. Civ. P. 21...............................................................................................10

N.Y. C.P.L.R. § 213(8)........................................................................................16

Cases:

Addison v. Reitman Blacktop, Inc., 283 F.R.D. 74 (E.D.N.Y. 2011).............................................14

Adlife Mktg. & Commc'ns Co. v. Best Yet Mkt., Inc.,
No. 17-CV-02987 (ADS) (ARL), 2018 WL 4568801, at *1 (E.D.N.Y. Sept. 24, 2018)..........9, 13

Balta v. Ayco Co., LP, 626 F.Supp.2d 347 (W.D.N.Y. 2009).......................................................17

Block v. First Blood Assocs., 988 F.2d 344 (2d Cir. 1993)..........................................................11

Bryan v. Commack Union Free Sch. Dist.,
No. 18-CV-7249 (RRM) (PK), 2021 WL 633751 (E.D.N.Y. Feb. 18, 2021)..............................11

Carbon Capital Management, LLC v. American Express Co.,
88 A.D.3d 933, 932 N.Y.S.2d 488 (2d Dept.2011)..........................................................18

Cohen v. S.A.C. Trading Corp., 711 F.3d 353 (2d Cir.2013)........................................................17

Dolmetta v. Uintah National Corp., 712 F.2d 15 (2d Cir.1983)....................................................17

Duling v. Gristede's Operating Corp., 265 F.R.D. 91 (S.D.N.Y. 2010)...................................14, 15

Feuer v. Cornerstone Hotels Corp.,
No. 14-CV-5388 (JFB) (SIL), 2017 WL 3841841 (E.D.N.Y. Aug. 4, 2017)..............................11

Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)..........................9, 13,

15

Holmes v. Grubman, 568 F.3d 329 (2d Cir. 2009)....................................................................10

Huber v. Nat'l R.R. Passenger Corp.,
No. 10 Civ. 09348(ALC)(DF), 2012 WL 6082385 (S.D.N.Y. Dec. 4, 2012)..............................12

IDT Corp. v. Morgan Stanley Dean Witter & Co.,
12 N.Y.3d 132, 879 N.Y.S.2d 355, 907 N.E.2d 268 (2009)......................................................17

Javier H. v. Garcia-Botello, 239 F.R.D. 342 (W.D.N.Y. 2006).....................................................16

Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229 (2d Cir. 2007)......................................10, 11

Koch v. Christie's International PLC, 699 F.3d 141 (2d Cir.2012).................................................16

Lee v. ABC Carpet & Home, 236 F.R.D. 193 (S.D.N.Y.
2006)...................................................16

Lema v. Fitizcon Construction/Ren Corp.,
No. 20-CV-2311 (MKB), 2022 WL 1321596 (E.D.N.Y. May 3,
2022).........................................11

Luck v. McMahon,
No. 3:20-CV-00516 (VAB), 2021 WL 4248887 (D. Conn. Sept. 17, 2021)................................11

Margel v. E.G.L. Gem Lab Ltd.,
No. 04-CV-1514 (PAC) (HBP), 2010 WL 445192 (S.D.N.Y. Feb. 8, 2010)..............................13

In re Merrill Lynch P'ships, 154 F.3d 56 (2d Cir. 1998)................................................................17

New York City Transit Authority v. Morris J. Eisen, P.C.,
276 A.D.2d 78, 715 N.Y.S.2d 232 (1st Dept.2000)......................................................................18

Nycomed U.S. Inc. v. Glenmark Generics Ltd.,
No. 08-CV-5023, 2010 WL 1257803 (E.D.N.Y. Mar. 26, 2010)..................................................15

Parker v. Columbia Pictures, Indus., 204 F.3d 326 (2d Cir. 2000).................................................10

Pasternack v. Shrader, 863 F.3d 162 (2d Cir. 2017).............................................................10, 12

Rachman Bag Co. v. Liberty Mutual Insurance Co., 46 F.3d 230 (2d Cir. 1995)........................13

Ruotolo v. City of New York, 514 F.3d 184 (2d Cir. 2008)............................................................14

Rush v. Artuz, 2001 WL 1313465 (S.D.N.Y., Oct. 26, 2001)........................................................10

Sacerdote v. N.Y. Univ., 9 F.4th 95 (2d Cir. 2021)..................................................................9, 10

Sargiss v. Magarelli, 12 N.Y.3d 527, 881 N.Y.S.2d 651, 909 N.E.2d 573 (2009).......................17

Sokol Holdings, Inc. v. BMD Munai, Inc.,
No. 05-CV-3749, 2009 WL 2524611 (S.D.N.Y. Aug. 14, 2009)..................................................11

Walsh v. Versa Cret Contracting Company,
No. 21-05697, 2023 WL 3570699  (E.D.N.Y. May 18, 2023)......................................................15

Zambrano v. Strategic Delivery Sols., LLC,
 No. 15-CV-8410 (ER), 2022 WL 3369597 (S.D.N.Y. Aug. 16, 2022).......................................16

Zomba Recording Corp. v. MP3.com, Inc.,
No. 00-CV-6831 (JSR), 2001 WL 770926 (S.D.N.Y. July 10, 2001)..........................................13

**PRELIMINARY STATEMENT:**

Plaintiff Eyvgenyi E, Scherban hereby moves this Court for leave to file his first amended complaint.  As set forth below, plaintiff has good cause for an extension of the deadlines to file the amended complaint.  Further, in seeking leave, there is an absence of bad faith, undue delay, and undue prejudice to the defendants.  Simply stated, as a result of FINRA arbitration, this matter was stayed from approximately September 30, 2015 through May 6, 2024, with a short period where the parties were able to proceed.  Finally, plaintiff's amendment is not futile.  Plaintiff's fraud based claims were all discovered during the discovery phase of the FINRA arbitration.  Therefore, the time during which a plaintiff was prevented from obtaining legal relief cannot counted for purposes of statutes of limitations.  For the reasons set forth below, it is respectfully requested that this Court grant plaintiff leave to file his amended complaint.

**PROCEDURAL HISTORY:**

This action was commenced on August 8, 2014 by the plaintiff Eyvgenyi E, Scherban, his siblings Ruslan E. Scherban and Yevgen E. Scherban, and the Estates of Yevgenyi A. Scherban and Nadejda Nikitina.  (Dkt. 1) (Exhibit A").  The complaint sought a turnover, an accounting and declaratory relief on behalf of the Estates against Merrill Lynch.  (Dkt. 1) (Exhibit "A").  Plaintiff, Ruslan E. Scherban and Yevgen E. Scherban were named in the Complaint as the lawful heirs of the Scherban and Nikitina Estates.  (Dkt. 1) (Exhibit "A").  On September 30, 2015, Defendants' motion to compel arbitration of the Scherban Estate's and Nikitina Estate's accounting and turnover claims was granted, because there is a valid agreement to arbitrate and these claims fall within the scope of those agreements. (Dkt. 2) (Exhibit "B").  Genuine issues of fact regarding the validity of the signature on Ruslan's CMA account existed, which necessitated

an evidentiary hearing.  (Dkt. 31).    In that same Order, this Court granted the Defendants

application to stay this proceeding pending arbitration, "in light of the efficiency and economy of

these judicial proceedings."  (Dkt. 31).

On November 13, 2015, in furtherance of this Court's directive, the FINRA Arbitration

was commenced.  (Dkt. 68, pg. 3).  The Statement of Claim, dated November 15, 2015, alleges

causes of action for an accounting, breach of contract, turnover of balances, breach of fiduciary

duties, exemplary or punitive damages for failing to turn over records, and violation of securities

laws.  (Exhibit "B").  On November 29, 2016, upon the exchange of documents, which led to the

discovery of certain forged powers of attorney, the claimants in the FINRA arbitration amended

their claim to include nineteen causes of action, many of which were based on fraud.  (Exhibit

"C").  (Scherban Decl. Para. 42, 43).

On May 18, 2018, after hearing, this Court directed that Ruslan Scherban must also

arbitrate his individual claims, and that the stay on all proceedings in this action would continue

until the results of the arbitration.  (Dkt. 49).  On August 9, 2018, a second amended statement of

claim was filed with FINRA, which now incorporated Ruslan Scherban's claims[1].  (Dkt. 64-12)

The eighteen claims in the second amended statement of claim are based on fraud.  (Dkt. 64-12)

(Exhibit "D"). The claims before FINRA were ultimately dismissed in February of 2019 based

upon the statute of limitations.  The award was confirmed and corrected by this Court on June

23, 2021.  (Dkt. 68).

A Civil Case Management Plan and Scheduling Order issued on December 9, 2021.  The

---

[1]Paragraph 29 of the amended statement of claim states: "Scherban also set up an account for Ruslan, the second son, namely No. 4212, as well as No. 8H48.  However, because of the dispute as to the authenticity of Ruslan's signature on the agreement with the arbitration clause, the scope of these arbitration proceedings may be reduced, and these accounts, in the name of Ruslan, cited herewith may be excluded from arbitration, to be left for adjudication in the court."

Order stated that the parties may amend the pleadings or join additional parties only upon a showing of good cause. (Dkt. 72). On February 9, 2022, defendant Merrill Lynch filed an Answer to the complaint. (Dkt 78). On March 8, 2022, this case was stayed upon the application of the plaintiff, based upon the Russian armed forces invasion in Ukraine. (Dkt. 83). The stay was continued to May 6, 2024. (Dkt. 107).

On June 13, 2024, this Court issued an Order finding that plaintiff Eyvengi E. Scherban is the only remaining plaintiff in this action. (Dkt. 109). The Order further directed that plaintiff Eyvengi E. Scherban file an amended complaint by July 12, 2024. (Dkt. 109). On July 29, 2024, plaintiff Eyvengi E. Scherban filed an amended complaint, naming additional parties and asserting additional causes of action based upon facts discovered during discovery in the FINRA arbitration. (Exhibit "E"). Summonses for the additional parties were also filed. (Dkt. 112, 113 and 114). The amended complaint was subsequently rejected twice. (Exhibit "F"). Plaintiff was advised by the SDNY attorneys services office that the pleading was rejected because defendant Merrill Lynch's aliases in the caption did not match those that were entered on the ECF docket. (Exhibit "F"). On September 26, 2024, this Court directed the plaintiff file a motion for leave to amend the complaint with respect to new parties and new claims. (Dkt. 120).

### STATEMENT OF FACTS:

Plaintiff Eyvengenyi E. Scherban is the eldest son of Yevgenyi A. Scherban. (Scherban Decl. para. 2). In the early 1990s, Eyvengenyi E. Scherban traveled with Yevgenyi A. Scherban, and his business partner Yuri Didukh, to New York City. (Scherban Decl. para. 3). During that trip, the three visited with Merrill Lynch. (Scherban Decl. para. 3). Yevgenyi A. Scherban and his second wife, Nadejda Nikitina, were murdered on November 3, 1996 in Donetsk, Ukraine, by

two gunmen.  (Scherban Decl. para. 4).  In connection with Yevgenyi A. Scherban's murder,

Yevgenyi A. Scherban's office was secured by law enforcement and his documents were seized.

(Scherban Decl. para. 5).  The plaintiff was aware that his father had an ongoing banking

relationship with Merrill Lynch, as its client, from approximately 1991 to November of 1996.

(Scherban Decl. para. 6).

   At the time of plaintiff's father's murder, plaintiff had no knowledge of the state of his

father's business affairs, including banking.  (Scherban Decl. para. 8).  Yevgenyi A. Scherban

was in charge of his business affairs using his management, including Igor Nikitin.  (Scherban

Decl. para. 8).

In or about December of 1996, Eyvengenyi E. Scherban learned of an assassination plot

of his life.  (Scherban Decl. para. 7).  He then relocated with his family from Donetsk to

Moscow.  (Scherban Decl. para. 7).  In 1997, an assassination attempt was made on Eyvengenyi

E. Scherban and Yevgenyi A. Scherban's partner.  (Scherban Decl. para. 7).  Alexander

Kostetsky, a security guard, was killed.  (Scherban Decl. para. 7). As a resident and citizen of

Ukraine, plaintiff was unable to renew his visa to the United  States.  (Scherban Decl. para. 9).

All correspondence from Yevgenyi A. Scherban's banks went to his assistants that were based in

the United States.  (Scherban Decl. para. 10).

On August 8, 2014, plaintiff and his siblings Ruslan E. Scherban and Yevgen E.

Scherban, and the Estates of Yevgenyi A. Scherban and Nadejda Nikitina, commenced an action

against Merrill Lynch for a turnover, an accounting and declaratory relief on behalf of the

Estates.  (Exhibit "A").   In 2014, after the commencement of this litigation, the defendants

disclosed that Yevgenyi A. Scherban had set up account in Eyvengenyi E. Scherban's name with

Merrill Lynch, namely Account No. 85D-14215.  (Scherban Decl. para. 11).  This was the first

time that Eyvengenyi E. Scherban had any knowledge of a Merrill Lynch account in his name.

(Scherban Decl. para. 11).  On September 30, 2015, the claims of the estates, amongst others

were referred to FINRA arbitration and the lawsuit was stayed pending the FINRA arbitration.

(Scherban Decl. para. 12).  During the pendency of the FINRA arbitration, certain Powers of

Attorney relating to the Scherban family accounts were exchanged by the defendants.   (Scherban

Decl. para. 15).  As a result of the discovery exchange in the FINRA arbitration, it was

discovered that on January 15, 1996, Defendant Merrill Lynch illegally registered three

fraudulent Powers of Attorney, allowing a certain third party, Igor Nikitin to operate the accounts

of Yevgenyi A. Scherban, and plaintiff's brother Ruslan E. Scherban.  Igor Nikitin was a free-

lance associate of Yevgenyi A. Scherban.  (Scherban Decl. para. 16).  Yevgenyi A. Scherban did

not speak English and relied on Defendant Igor Nikitin to assist him with certain business

opportunities in the United States.  (Scherban Decl. para. 16).   The Powers of Attorney were

purportedly executed on January 15, 1996.  (Scherban Decl. para. 16).

     According to customs records, on January 11, 1996, Yevgenyi A. Scherban and Nikitina

returned to Ukraine.  (Scherban Decl. para. 17).   Days later, on January 18, 1996, Yevgenyi A.

Scherban had a 50-year birthday party and he, plaintiff and Ruslan E. Scherban participated in its

preparation in Donetsk, Ukraine.   (Scherban Decl. para. 17).   After that birthday party in

Donetsk, as records show, Yevgenyi A. Scherban, Nikitina, Plaintiff and Ruslan E. Scherban

went on a trip to Thailand.   (Scherban Decl. para. 18).  Despite a resemblance of the last names,

Igor Nikitin was not a relative and had nothing to do with Nikitina.  (Scherban Decl. para. 19).

     All three fraudulent Powers of Attorney were missing crucial information and the

purported signatures of these three persons did not resemble the true signatures of the account holders.  (Scherban Decl. para. 20).  None of these three fraudulent Powers of Attorney contained any notarized signatures.  (Scherban Decl. para. 21).  Despite the safeguards required from financial institutions, Merrill Lynch failed to follow, or comply with, the law concerning certification of signatures, including but not limited to New York's Executive Law § 135. 'Powers and duties; in general; of notaries public who are attorneys at law.'  (Scherban Decl. para. 22).  The scheme of the fraudulent Powers of Attorney was contrary to Merrill Lynch's own internal regulations, to wit: "The Firm does not encourage power of attorney accounts.  When the client wants to appoint an agent, a written authorization and prior approval of your RVP/RM. must be obtained."  (Scherban Decl. para. 23).  (Exhibit "D," para. 30).  Merrill Lynch was obligated to have a purported signor for each Power of Attorney appear at its branch and sign such documents in person.  (Scherban Decl. para. 24).  Merrill Lynch's own regulations concerning the Powers of Attorney required that a ". . .Resident Vice President/Resident Manager (RVP/RM) approval is required for a General POA authorization," and "due to broad powers of a General POA, its use is discouraged."  (Scherban Decl. para. 25) (Exhibit "D," para. 32).  The Merrill Lynch participation in entertaining the fraudulent and void Powers of Attorney, with forged signatures without notarization, in a civil conspiracy scheme, allowed subsequent confiscation of funds from plaintiff accounts and those of his family.  (Scherban Decl. para. 26).

Jeffry Schneider, as the financial advisor holding a position of a Vice President at that branch, was involved in that scheme with Igor Nikitin. (Scherban Decl. para. 27).  The fraudulent scheme of fabricated Powers of Attorney was against the Merrill Lynch other regulations, to wit:

Before orders may be entered in an account by any person other than the owner, a

> power of attorney must be executed by the customer, without change or alteration.
> The Corporation does not encourage the use of powers of attorney (refer to
> Sections 02.2.16.1 and 02.2.16.2). . . The Corporation does not want to accept
> such authority from customers except in those instances where the agent or
> attorney is a member of the immediate family of the customer. It is necessary to
> have an indication at the bottom of the form as to the family relationship between
> the agent and the customer.

(Scherban Decl. para. 28) (Exhibit "D," para. 34). Furthermore, the conduct of the Merrill Lynch

branch in this matter was contrary to its own policy restrictions to protect clients' accounts, to

wit: "A Power of Attorney - General (Code 119) permits trading and withdrawing of funds.

Offices may accept all instructions from the holders to deliver funds and securities in the names

of persons other than the customer or in the name of the agent himself, except that instructions

will not be accepted from the agent to transfer funds or securities from the principal's account to

the agent's account." (The underlining is retained from original text). (Scherban Decl. para. 29)

(Exhibit "D," para. 35).

    In the event the Merrill Lynch branch illegally chose to treat the Scherban family

accounts as discretionary, its other regulations were not complied with, to wit: "Once the

approval of the RVP/RM has been obtained, copies of the power of attorney and memo of the

customer's interview will be forwarded to the office's Regional Director, or his appointed

designee, whose approval is necessary before the account will be accepted on behalf of the

Corporation."  (Scherban Decl. para. 30) (Exhibit "D," para. 36). Thereafter, a series of

fraudulent transfers were made from the Scherban accounts through the use of the forged Powers

of Attorney. (Scherban Decl. para. 31). For example, on January 22, 1996, $100,000.00 was

transferred out of the plaintiff's Account No. 85D-14215.   (Scherban Decl. para. 32)

    In April of 1996, Yevgenyi A. Scherban returned to New York, without notification, with

what appeared to be an inspection visit, detecting some irregularities in the Merrill Lynch's accounts. (Scherban Decl. para. 33). Yevgenyi A. Scherban, his assistant, and Nedejda Nikitina, went to the Merrill Lynch branch and met with Defendant Jeffry Schneider to discuss suspect transactions. Jeffry Schneider promised to undertake a investigation. (Scherban Decl. para. 33). On April 17, 1996, Yevgenyi A. Scherban and Igor Nikitin made an agreement concerning what appeared to be illegal takings from the accounts of the Scherban family. (Scherban Decl. para. 34). The signatures on the agreement between Scherban and Igor Nikitin were notarized. (Scherban Decl. para. 34). The April 17, 1996 agreement cited five unauthorized transactions or takings as follows: $155,000.00; $170,000.00; $185,000.00; $289,000.00 and $100,000.00, for the total of $899,000. (Scherban Decl. para. 35). The agreement provided for the schedule of repayments. (Scherban Decl. para. 35). The agreement stated in its relevant part: "If funds are returned according to or ahead of schedule, Mr. E.A. Chtcherban indemnifies and holds harmless all and any of the following persons or entities and will not file a suit against them in order to recover the above mentioned funds in the court of law: 1. Mr. I. Nikitin, 2. Mr. J. Schneider, vice president of Merrill Lynch, 3. Merrill Lynch. However, Mr. Chtcherban reserves the right to gather all the necessary evidence to possibly file a criminal suit against the above mentioned in case of the breach of this agreement." (Scherban Decl. para. 36) (Exhibit "D," para. 36). None of these amounts, taken from the Scherban family accounts were returned to the accounts either before or after Yevgenyi A. Scherban's murder on November 3, 1996. (Scherban Decl. para. 37). Merrill Lynch failed to follow its own regulations, spelled out in its own internal memoranda: "When a power of attorney exists, you must know both the principal and the agent. IT IS YOUR RESPONSIBILITY TO UPDATE ALL REQUIRED DOCUMENTS FOR THE ACCOUNT AS

CHANGES OCCUR. OUT-OF-DATE INFORMATION CAN UNDERMINE OUR DEFENSE

IF COMPLAINTS OR LAWSUITS ARISE."  (Capital letters retained from original document).

(Scherban Decl. para. 38) (Exhibit "D," para. 42).

**ARGUMENT:**

Rules 15 and 16 of the Federal Rules of Civil Procedure govern a plaintiff's ability to

amend the complaint, and "when read together, set forth three standards for amending pleadings

that depend on when the amendment is sought." Sacerdote v. N.Y. Univ., 9 F.4th 95, 115 (2d

Cir. 2021).  First, Rule 15(a)(1) permits "a plaintiff [to] freely amend her pleadings. . . as of right

without court permission" twenty-one days after a complaint is served or twenty-one days after

service of a responsive pleading or motion under Fed. R. Civ. P. 12(b), (e), or (f).  Id. at 115.

Second, after the time to amend as of right has passed - "either upon expiration of a

specified period of time in a scheduling order or upon expiration of the default period set forth in

Rule 15(a)(1)(A)" - a plaintiff seeking to amend a complaint must either request leave from the

court or obtain the opposing party's written consent.  Id. at 115; Fed. R. Civ. P. 15(a)(2).  Rule

15(a)(2) sets forth a lenient standard under which "[t]he court should freely give leave [to amend]

when justice so requires."  Fed. R. Civ. P. 15(a)(2).  "Unless there is a showing of bad faith,

undue delay, futility or undue prejudice to the non-moving parties, the district court should grant

leave to amend." Adlife Mktg. & Commc'ns Co. v. Best Yet Mkt., Inc., No. 17-CV-02987

(ADS) (ARL), 2018 WL 4568801, at *1 (E.D.N.Y. Sept. 24, 2018) *citing* Foman v. Davis, 371

U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).

Third, Rule 15(a)(2)'s period of "liberal" amendment ends upon expiration of the date set

by the court as the deadline after which no amendment will be permitted.  Sacerdote, supra at

115.  At that point, Rule 16 also applies, and a court must balance the "liberal" amendment standard of Rule 15 with Rule 16(b)(4)'s requirement that the plaintiff show "good cause" for an extension of the deadline to amend.  Fed. R. Civ. P. 16(b)(4); Holmes v. Grubman, 568 F.3d 329, 334–35 (2d Cir. 2009); see also Pasternack v. Shrader, 863 F.3d 162, 174 n.10 (2d Cir. 2017) (plaintiff must satisfy both Rules 15 and 16 to be permitted to amend after the deadline in the scheduling order has passed).  The purpose of Rule 16(b)(4) is to "offer a measure of certainty in pretrial proceedings, ensuring that at some point both the parties and the pleadings will be fixed." Parker v. Columbia Pictures, Indus., 204 F.3d 326, 340 (2d Cir. 2000) (quotation marks omitted). The good cause standard permits the trial court to exercise "discretion to ensure that limits on time to amend pleadings do not result in prejudice or hardship to either side."  Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 243–44 (2d Cir. 2007).  The "primary consideration" when determining good cause is "whether the moving party can demonstrate diligence" in seeking leave to amend.  Id. at 244; Parker at 340.

Although Fed. R. Civ. P. 15(a) generally governs the amendment of complaints, where the proposed amendment seeks to add new parties, Fed. R. Civ. P. 21 governs.  Rush v. Artuz, 2001 WL 1313465, at *5 (S.D.N.Y., Oct. 26, 2001).  Rule 21 states that "[p]arties may be. . . added by order of the court on motion of any party. . . at any stage of the action and on such terms as are just."  Fed. R. Civ. P. 21.

Rule 16(b)(4)'s good cause requirement is met when a "party [shows] that, despite its having exercised diligence, the applicable deadline could not have been reasonably met."  Sokol Holdings, Inc. v. BMD Munai, Inc., No. 05-CV-3749, 2009 WL 2524611, at *7 (S.D.N.Y. Aug. 14, 2009).  Diligence is shown when "the basis for the claim arose several months before the

party requested the amendment." Lema v. Fitizcon Construction/Ren Corp., No. 20-CV-2311 (MKB), 2022 WL 1321596, at *4 (E.D.N.Y. May 3, 2022); see also Bryan v. Commack Union Free Sch. Dist., No. 18-CV-7249 (RRM) (PK), 2021 WL 633751, at *4 (E.D.N.Y. Feb. 18, 2021) (finding good cause to allow amendment of a complaint to add retaliation claims six months after the amendment deadline because plaintiff learned the relevant facts after the deadline). By contrast, "[a] party fails to show good cause when the proposed amendment rests on information that the party knew, or should have known, in advance of the deadline." Luck v. McMahon, No. 3:20-CV-00516 (VAB), 2021 WL 4248887, at *36 (D. Conn. Sept. 17, 2021); Feuer v. Cornerstone Hotels Corp., No. 14-CV-5388 (JFB) (SIL), 2017 WL 3841841, at *4 (E.D.N.Y. Aug. 4, 2017), R. & R. adopted, No. 14-CV-5388 (JFB) (SIL), 2017 WL 3842350 (E.D.N.Y. Aug. 31, 2017).

In determining whether a plaintiff has met Rule 16's good cause requirement, a court may also consider other relevant factors, including whether allowing amendment at that particular stage of the litigation would prejudice a defendant. Kassner, supra at 244. An assessment of prejudice includes consideration of "whether the assertion of the new claim would: (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." Block v. First Blood Assocs., 988 F.2d 344, 350 (2d Cir. 1993). "[D]elay (and its necessary consequence, litigation expense) does not, without more, constitute undue prejudice." Pasternack, supra at 174.

Once a court has determined that the party seeking leave to amend the complaint after the deadline has passed has shown good cause, it must then ensure that the party has also met the

-11-

requirements of Rule 15(a)(2) and show that there is no bad faith, undue delay, futility, or undue prejudice to the non-moving parties.  See Huber v. Nat'l R.R. Passenger Corp., No. 10 Civ. 09348(ALC)(DF), 2012 WL 6082385, at *3–8 (S.D.N.Y. Dec. 4, 2012).

   I.   PLAINTIFF HAS SATISFIED THE RULE 16 ANALYSIS.

  The amended complaint advances seven causes of action: first that a conspiracy commenced with the fraudulent execution and use of the Powers of Attorney by Igor Nikitin and Jeffry Schneider, the Vice-President and financial consultant at Merrill Lynch; second, fraud in that Jeffry Schneider, and with knowledge of the requirement for rigorous authentication and verification processes, engaged in fraudulent conduct by knowingly accepting and implementing three forged Powers of Attorney purportedly executed by Plaintiff, allowing unauthorized access to plaintiff's account; third, defendants, acting in concert through a pattern of racketeering activity as defined under 18 U.S.C. § 1961, engaged in a scheme to defraud Plaintiff and his family of their rightful assets held at Merrill Lynch through a series of fraudulent and deceptive practices; fourth, that Merrill Lynch, through their financial consultant Jeffry Schneider, breached their fiduciary duties by knowingly accepting and implementing a Power of Attorney purportedly executed by Plaintiff; fifth, conversion; sixth, turnover of accounts; and seventh, an accounting.

  In the matter at bar, the plaintiff discovered all of the facts necessary to allege causes of action sounding in fraud during the FINRA arbitration.  At that time, this proceeding was stayed. The stay was continued to May 6, 2024.  (Dkt. 107).  The docket still lists this case as stayed. On June 13, 2024, this Court issued an Order finding that plaintiff Eyvengi E. Scherban is the only remaining plaintiff in this action.  (Dkt. 109).  The Order further directed that plaintiff

Eyvengi E. Scherban file an amended complaint by July 12, 2024.  (Dkt 109).   On July 29, 2024, plaintiff Eyvengi E. Scherban filed an amended complaint, naming additional parties and asserting additional causes of action based upon facts discovered during discovery in the FINRA arbitration.  The plaintiff sought to amend the complaint and add additional parties immediately after this Court directed him to so (June 13, 2024), which was less than three months after May 6, 2024 (the date that the stay may have expired).  Courts have granted leave to amend under Rule 16 in circumstances where plaintiffs had access to facts relevant to the proposed amendments for much longer periods of time than the two-month time frame at issue here.  See, e.g., Margel v. E.G.L. Gem Lab Ltd., No. 04-CV-1514 (PAC) (HBP), 2010 WL 445192, at *10 (S.D.N.Y. Feb. 8, 2010) (granting motion to amend despite delay of at least six months and noting that "courts frequently grant leave to amend after much longer periods of delay"); Zomba Recording Corp. v. MP3.com, Inc., No. 00-CV-6831 (JSR), 2001 WL 770926, at *1 (S.D.N.Y. July 10, 2001) (granting leave to amend despite seven-month delay by plaintiffs given the absence of any material prejudice).  Finally, the plaintiff was sufficiently diligent in amending the complaint to add parties and causes of action.  The Plaintiff only learned of these parties and the fraudulent acts during the FINRA arbitration.  The delay herein was only caused by the arbitration and stay.   In Rachman Bag Co. v. Liberty Mutual Insurance Co., 46 F.3d 230, 235 (2d Cir. 1995), the Second Circuit affirmed the district court's grant of leave to amend the defendant's answer to include a fraudulent concealment defense despite a four-year delay between when the defendant learned some relevant facts and when it moved to amend.  Plaintiff's only opportunity to amend was in May or June of 2024.  As such, the plaintiff acted with diligence and there is good cause to amend the complaint as required by Rule 16.

-13-

II.    THERE IS AN ABSENCE OF BAD FAITH, UNDUE DELAY,
FUTILITY OR UNDUE PREJUDICE TO THE NON-MOVING
PARTIES.

As discussed above, Rule 15(a)(2) calls for granting leave to amend "when justice so

requires." Fed. R. Civ. P. 15(a)(2). District courts will grant leave under this rule absent "a

showing of bad faith, undue delay, futility or undue prejudice to the non-moving parties." Adlife

Mktg., supra at *1 citing Foman, supra at 182. Plaintiff meets and exceeds the Rule 15(a)(2)

standards. There is no bad faith on the part of the plaintiff in seeking leave to amend the

Complaint to add the fraud based claims. Moreover, the record does not reflect that permitting

such an amendment would cause any undue delay in the litigation or prejudice to the defendants,

as the stay was only lifted from this case recently. Finally, any claim that the proposed claim are

futile is belied by the record.

A.    Undue Delay and Undue Prejudice.

Regarding whether Plaintiff has a "valid excuse" for the delay, "[a]lthough some

explanation must be provided to excuse a delay, even vague or 'thin' reasons are sufficient, in the

absence of prejudice or bad faith.'" Addison v. Reitman Blacktop, Inc., 283 F.R.D. 74, 80

(E.D.N.Y. 2011) citing Duling v. Gristede's Operating Corp., 265 F.R.D. 91, 97-98 (S.D.N.Y.

2010) (quotations in original) (citations omitted).

Moreover, delay alone, in the absence of bad faith or prejudice, is not a sufficient reason

for denying a motion to amend. Ruotolo v. City of New York, 514 F.3d 184, 191 (2d Cir. 2008)

("Prejudice to opposing party is the most important factor and the most frequent reason for

denying leave to amend) (quotations and citations omitted). Thus, even if the Plaintiff had

ascertained the individual defendant's identities from the Defendants' earlier productions, absent

-14-

bad faith or prejudice to the Defendants, it would not constitute grounds for denying the motion to amend. See Duling, supra at 99 (S.D.N.Y. 2010) ("Although defendants appear to be correct that plaintiffs' counsel was aware of [the party to be added's] potential role since early 2005, defendants do not explain how this delay prejudices them [and] [b]ecause delay alone is insufficient to deny a motion to amend, . . . [and] defendants have not demonstrated any prejudice, plaintiffs' delay in seeking to add [the new defendant] is not a sufficient basis to deny plaintiffs' motion [to amend].").

 The amended claims will not delay the litigation or cause Defendants undue prejudice, because discovery has not commenced in the instant action as a result of the stays, no trial date has been set by the Court, and no motion for summary judgment has been filed.  Indeed, much of the discovery has already been in exchanged as a result of the FINRA arbitration.  In Walsh v. Versa Cret Contracting Company,  No. 21-05697, 2023 WL 3570699, at *7  (E.D.N.Y. May 18, 2023), the court granted the plaintiff leave to add claims after the deadline to amend the complaint on the basis that there was no prejudice to the defendants where "[t]he parties have not ventured far past discovery ... no trial date has been set ... nor have any dispositive motions been filed. . .".  "[T]he need to conduct additional discovery is not, in itself, sufficient to constitute prejudice." Margel, supra at *12.  "The type of prejudice that warrants denial of leave to amend is usually such that it puts the opposing party at an unfair disadvantage, such as the addition of a new claim on the eve of trial."  Nycomed U.S. Inc. v. Glenmark Generics Ltd., No. 08-CV-5023, 2010 WL 1257803, at *12 (E.D.N.Y. Mar. 26, 2010) (brackets and quotation marks omitted).

  B.  Plaintiff's Claims are not Futile.

 Leave to amend may be denied when granting leave would be prejudicial or would be

futile because the amended complaint would not survive a motion to dismiss.  See Foman, supra.

The causes of action are supported by the detailed fact in the complaint that were discovered and

alleged in the first and second amended statements of claim in the FINRA proceeding.  The only

anticipated argument from the defendants would be that the proposed amended complaint is

barred by the statute of limitations.  Importantly, "*[w]here parties are ordered or agree by

stipulation to suspend proceedings during the pendency of legal proceedings, the time during

which a party is prevented from obtaining legal relief is not counted for purposes of statutes of

limitations*."  Zambrano v. Strategic Delivery Sols., LLC, No. 15-CV-8410 (ER), 2022 WL

3369597, at *7 (S.D.N.Y. Aug. 16, 2022) *quoting* Lee v. ABC Carpet & Home, 236 F.R.D. 193,

199 (S.D.N.Y. 2006) (emphasis added).  The stay of discovery thus tolled the statute of

limitations for one year, four months, and eight days.  Id. (granting equitable tolling of the statute

of limitations for the stay period); Javier H. v. Garcia-Botello, 239 F.R.D. 342, 347 (W.D.N.Y.

2006) (calculating remaining length of statute of limitations period following a stay of

discovery).

　　　　New York law provides that an action based upon fraud, including claims of aiding and

abetting and conspiracy to commit fraud, must be commenced within "the greater of six years

from the date the cause of action accrued or two years from the time the plaintiff. . . discovered

the fraud, or could with reasonable diligence have discovered it."  N.Y. C.P.L.R. § 213(8); see

also Koch v. Christie's International PLC, 699 F.3d 141, 154 (2d Cir.2012) (aiding and abetting

and conspiracy to commit fraud); Sargiss v. Magarelli, 12 N.Y.3d 527, 532, 881 N.Y.S.2d 651,

909 N.E.2d 573 (2009). Claims for breach of fiduciary duty, and aiding and abetting breach of

fiduciary duty, that are based upon fraud are subject to the same limitations period, i.e., six (6)

years from the date the cause of action accrued or two (2) years from the time the plaintiff
discovered, or could with reasonable diligence have discovered, the fraud. See Cohen v. S.A.C.
Trading Corp., 711 F.3d 353, 361 (2d Cir.2013); IDT Corp. v. Morgan Stanley Dean Witter &
Co., 12 N.Y.3d 132, 139, 879 N.Y.S.2d 355, 907 N.E.2d 268 (2009) ("[W]here an allegation of
fraud is essential to a breach of fiduciary duty claim, . . . a six-year statute of limitations. . .
[applies]." (citations omitted); Dolmetta v. Uintah National Corp., 712 F.2d 15, 19 (2d Cir.1983)
(aiding and abetting breach of fiduciary duty); Balta v. Ayco Co., LP, 626 F.Supp.2d 347, 359
(W.D.N.Y. 2009) ("The statute of limitations for a claim of aiding and abetting a breach of
fiduciary duty is the same limitations period that would apply to the underlying breach.") Since
all of plaintiff's claims that defendants breached their fiduciary duty, or aided and abetted the
breach of a fiduciary duty, to him are essentially fraud-based claims, they are subject to the same
six (6)-year/two (2)-year limitations period applicable to his fraud claims.

    In a RICO case, the first step in the statute of limitations analysis is to determine when
the plaintiff sustained the alleged injury for which the plaintiff seeks redress. The court then
determines when the plaintiff "discovered or should have discovered the injury and begin[s] the
four-year statute of limitations period at that point." In re Merrill Lynch P'ships, 154 F.3d 56, 59
(2d Cir. 1998). As a general matter, "the limitations period does not begin to run until [a
plaintiff] ha[s] actual or inquiry notice of the injury." Id. at 60.

    Under New York law, "[a] cause of action to recover damages for fraud cannot accrue
until every element of the claim, including injury, can truthfully be alleged." Carbon Capital
Management, LLC v. American Express Co., 88 A.D.3d 933, 939, 932 N.Y.S.2d 488 (2d
Dept.2011) quoting New York City Transit Authority v. Morris J. Eisen, P.C., 276 A.D.2d 78,

85, 715 N.Y.S.2d 232 (1st Dept.2000) (brackets omitted)).  Plaintiff's fraud-based claims,

including his breach of fiduciary duty and aiding and abetting breach of fiduciary duty claims,

against defendants are premised upon the fraudulent Powers of Attorney.  The Powers of

Attorney were discovered during the FINRA arbitration.  The fraud based claims are timely if

they were commenced within two (2) years of the date plaintiff discovered the fraud, or could

have discovered the fraud in the exercise of reasonable diligence.  As a result of the stays, these

causes of action are commenced within the applicable statute of limitations.  Therefore,

Plaintiff's statute of limitations on his federal claims has not yet expired; indeed, in light of the

stays.

**CONCLUSION:**

For the reasons set forth above, it is respectfully requested that this Court grant plaintiff

leave to file the amended complaint.  (Exhibit "E").

Dated: Brooklyn, New York
     October 15, 2024

        */s/ Alexander M. Dudelson*
        ALEXANDER M. DUDELSON, ESQ. (AD4809)
        *Attorney for Plaintiff*
        26 Court Street - Suite 2306
        Brooklyn, New York 11242
        (718) 855-5100