**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
EYVGENYI E. SCHERBAN,                              :
                                                   :
                Plaintiff,                  :        14-CV-6312 (VSB) (OTW)
                                                   :
            -against-                       :        **OPINION & ORDER**
                                                   :
MERRILL LYNCH et al.,                              :
                                                   :
                Defendants.                 :
-------------------------------------------------------------x

**ONA T. WANG**, **United States Magistrate Judge**:

    **I.    INTRODUCTION**

        Plaintiff, Eyvgenyi Scherban ("Eyvgenyi"), instituted this action in 2014 with his brothers, seeking to recover assets that they claim were stolen or transferred from their parents around the time of their deaths in 1996. (ECF 1). The majority of the claims in the initial complaint were compelled to arbitration, and the arbitration award was confirmed and modified by Judge Broderick on June 23, 2021. (ECF 68). At that point, the only remaining claim was Eyvgenyi's claim concerning his own Merrill Lynch account, the '4215 Account. Eyvgenyi's claim was stayed from approximately September 2015 to March 2019 pending arbitration of the other claims, and again from March 2022 to May 2024 due to the Russian invasion of Ukraine. (*See* ECF 82–107). Plaintiff now seeks to amend his complaint to add new claims against two new defendants: Igor Nikitin ("Nikitin") and Jeffry Schneider ("Schneider"). (ECF Nos. 124, 125, 126, 127, 130).

        For the reasons discussed below, Plaintiff's motion to amend his complaint is **DENIED**.

II. **BACKGROUND**

    A. <u>**Procedural History**</u>

The Court assumes familiarity with the facts of this case and briefly summarizes the relevant procedural history here.

The original Plaintiffs—three sons (Eyvgenyi, Yevgen and Ruslan) and their father's and his wife's estates—brought this case in 2014, alleging that Defendant Merrill Lynch ("Merrill") lost millions of dollars that their parents had deposited with Merrill before their deaths in 1996. Judge Broderick granted Merrill's motion to compel arbitration, and this case was stayed pending the FINRA arbitration, which took place over seven days in 2018 and 2019. The only claim for which arbitration was denied was Eyvgenyi's claims related to his own Merrill Lynch account. (ECF 68 at 24-25). Eyvgenyi's claims as a "lawful heir of [his father] Yevgenyi A. Scherban," were arbitrated. (ECF 68 at 25). All of Eyvgenyi's brothers' (Ruslan and Yevgen) and the estates' claims were compelled to arbitration, and all of the arbitration awards were confirmed on June 23, 2021. (ECF 68). The parties filed a joint statement on July 29, 2021, (ECF 70), which I converted to a case management plan (ECF 72) upon the parties' request, after the case was referred to me for general pretrial management. (ECF 71).

Defendant answered the original complaint on February 9, 2022. (ECF 78.) Even though there remained only one Plaintiff in the action, Defendant's status letters referred to "plaintiffs' discovery requests." (*See, e.g.*, ECF 75).[1] On March 5 and 6, 2022, Plaintiff filed emergency

---

[1] As of January 31, 2022, Plaintiff had served discovery requests – to which Defendant had already responded—and subpoenaed non-parties for documents and depositions, and Defendant indicated that they "[did] not intend to take [party or non-party] discovery" "[i]n light of the extensive e discovery that was produced in the Arbitration and the testimony of the various witnesses at the hearing." (ECF 75 at 1-2). Plaintiff proposed to take three depositions of an unnamed witness in Florida, and then of Alexei Alekseenko and Jeffry Schneider, but was experiencing difficulties scheduling Alekseenko and Schneider. (*Id.* at 2).

motions to stay the case for three months in light of Russia's invasion of Ukraine and the difficulties attendant with communicating with "three Plaintiffs, the sons of the late Yevgenyi A. Scherban, [who] are residents of Ukraine." (*See* ECF 82, 83 at 1). The stay was granted on March 8, 2022, and renewed, generally on consent, until May 6, 2024, with the parties filing periodic joint status letters.

On February 6, 2024, Plaintiffs' former attorney withdrew, and Alexander Dudelson filed a notice of appearance on behalf of Eyvgenyi Scherban. (ECF 106). In granting prior counsel's withdrawal, the Court directed him to "inform the Court whether [the other] Plaintiffs' claims have been addressed with finality, or whether these Plaintiffs expect to continue *pro se*." (ECF 107). Outgoing counsel filed a multi-page status letter in response that made no reference to the arbitration award that had been confirmed by Judge Broderick, and "respectfully abstain[ed] from taking any position on behalf of any plaintiffs in this matter." (ECF 108 at 4). Accordingly, after reviewing Judge Broderick's June 23, 2021, Opinion and Order, I confirmed that "the only remaining claims in this action that were not resolved by the arbitration panel are the individual claims of Eyvgenyi E. Scherban," and directed Eyvgenyi to file an amended complaint. (ECF 109).

Plaintiff's new counsel attempted to file an amended complaint on July 26 and July 29, 2024, (ECF Nos. 112, 113, 114, 115), and Defendant objected to Plaintiff's proposed amended complaint on July 30, 2024, (ECF 118), asserting that Plaintiff could not add new claims or defendants without leave of court. The motion for leave to amend was fully briefed on November 13, 2024.

3

### B. The Proposed Amended Complaint

In the original complaint, Plaintiff alleged that he had one account (the "'4215 account") that had been set up by his father. (ECF 1 ¶ 37). Plaintiff was also unable to obtain complete statements for the '4215 account. (*Id.* at ¶ 46). All of the plaintiffs sought recovery from Merrill (and its successor, Bank of America N.A.) for the assets of any and all accounts associated with the family, production of all records, and to "judicially recognize and adopt the determination of the rights of the heirs of the estates of" Eyvgenyi's father and his father's wife. (*Id.* at ¶ 55).

The proposed amended complaint seeks to add two individual defendants, Schneider and Nikitin. Schneider was a financial consultant with the private client group at Merrill. One of the documents produced in discovery for the arbitration was a power of attorney registered on January 15, 1996, that gave Nikitin the power to act in Plaintiff's account (as well as the accounts of his family members). Plaintiff asserts that the power of attorney was fraudulent because Plaintiff's father and his wife had left the United States on January 11, 1996, and Plaintiff's father did not apparently return to the United States until April 1996. In April 1996, Plaintiff's father appears to have entered into an agreement with Schneider and Nikitin for them to restore approximately $899,000 to the family's accounts. Plaintiff's father and his wife were murdered in November 1996, and Plaintiff's attempts to find out about his accounts were unsuccessful.

In the proposed amended complaint, Plaintiff raises the following claims: civil conspiracy to defraud, fraud, civil RICO, breach of fiduciary duty, conversion, and common law turnover and accounting claims.

4

III.   DISCUSSION

    A.   **Legal Standard**

Rule 15(a) provides that a court "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). It is within the trial court's discretion to grant or deny leave to amend under Rule 15(a)(2). *See Zenith Radio Corp. v. Hazeltine Rsch, Inc.*, 401 U.S. 321, 330 (1971). A court may deny leave to amend for "good reason," which normally involves an analysis of the following four factors: undue delay, bad faith, futility of amendment, or undue prejudice to the opposing party. *See McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Rule 16(b) requires the Court to enter a scheduling order that "limit[s] the time to join other parties, [and] amend the pleadings." Fed. R. Civ. P. 16(b)(3)(A). Rule 16(b) further states that the schedule "may be modified only for good cause." Fed. R. Civ. P. 16(b)(4); *see also* Fed. R. Civ. P. 16(b)(1), (3)(A). The purpose of Rule 16(b) is "to offer a measure of certainty in pretrial proceedings, ensuring that at some point both the parties and the pleadings will be fixed." *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 339-40 (2d Cir. 2000) (internal citations and quotation marks omitted). The movant must demonstrate diligence to satisfy the good cause standard. *Grochowski*, 318 F.3d at 86 ("Where a scheduling order has been entered, the lenient standard under Rule 15(a), which provides leave to amend 'shall be freely given,' must be balanced against the requirement under Rule 16(b) that the Court's scheduling order 'shall not be modified except upon a showing of good cause.'"). In other words, the party must show that, despite its having exercised diligence, the applicable deadline could not have been

5

reasonably met. *See Rent-A-Center Inc. v. 47 Mamaroneck Ave. Corp.*, 215 F.R.D. 100, 104 (S.D.N.Y. 2003); *Parker*, 204 F.3d at 340.

### B. Plaintiff has not shown good cause

Rule 16's good cause standard applies here because shortly after the arbitration was concluded and confirmed, I entered a case management plan that provided for no amendments absent a showing of good cause. (ECF 72). The initial order directing Plaintiff to amend was issued because prior and current counsel were unable to clarify the remaining claim(s) in the action; it was never intended to be a "do over" for Plaintiff(s). (ECF 109).

#### *1. Plaintiff has not exercised diligence in seeking amendment*

Plaintiff did not act diligently in seeking amendment. Document discovery was completed more than eight years ago in the arbitration.[2] Both Schneider and Nikitin were freely referenced in the first FINRA Statement of Claim ("Statement of Claim" or "SoC"), dated November 12, 2015, (ECF 125-2). The (First) Amended SoC, dated November 29, 2016, was filed after Claimants had received document discovery and references the powers of attorney and the April 1996 agreement, meaning Plaintiffs were already aware of the allegedly fraudulent powers of attorney and the alleged April 1996 agreement. (ECF 125-3 at ¶¶ 30–42). These claims are also referenced in the Second Amended SoC, dated August 9, 2018. (ECF 125-4 ¶¶ 28-40). Indeed, Schneider was identified in the Complaint as the financial consultant who worked in the Merrill department that handled Plaintiff's and his family's accounts. (ECF 1

---

[2] In the parties' July 29, 2021, joint status letter, the parties stated: "While Defendants do not oppose the foregoing discovery schedule, it is Defendants' position that (1) Merrill Lynch produced all documents relating to all of the Scherban accounts that it was able to locate during the course of the arbitration, including the 4215 Account; (2) Merrill Lynch has been unable to locate any other documents relating to the Scherban accounts, including the 4215 Account…" (ECF 70).

6

¶ 34). Although not referenced in the Complaint, Plaintiff appears to have been aware of Nikitin and the powers of attorney and the alleged April 1996 agreement as early as November 12, 2015. (See SoC at ECF 125-2 ¶ 30) ("[O]ral recollections and random documentary evidence also shows that Schneider may have acted in conjunction or conspiracy with [Nikitin], who was at some point, in or about April of 1996, removed from being assistant to Scherban, but continued to be in communication with Merrill Lynch.").

Although this case was stayed pending the FINRA arbitration, then-Plaintiffs had moved to vacate the March 1, 2019, arbitration award on March 30, 2019. (*See, e.g.* ECF Nos. 53, 54). Plaintiffs' motion for vacatur reargued the issues concerning the allegedly fraudulent POAs, but at no time between March 1, 2019, (the expiration of the stay pending arbitration) and December 29, 2021 (the date I entered the case management plan)—a period of more than **two and a half years**—did Plaintiff indicate any intent or desire to amend the complaint. Plaintiff then sought a stay in light of Russia's invasion of Ukraine, made on March 5, 2022, and granted on March 8, 2022, discussed the status of discovery, but again made no mention of an intent to amend the Complaint. (*See* ECF 82). The second stay lasted from March 8, 2022, to as late as July 26, 2024,[3] the extended date by which Plaintiff was directed to file an Amended Complaint that clarified the remaining claims at issue. (See, *e.g.*, 107, 109).

Plaintiff suggests, without support, that the case was continuously stayed from the FINRA arbitration until May 6, 2024, (ECF 124 ¶ 12), but Plaintiff has curiously ignored: Judge Broderick's rulings on the arbitration award from **2021**; the parties' own representations about

---

[3] It is not clear from the docket that the parties intended the case to be stayed during this entire time period, as the docket reflects a request to take a third-party deposition, (ECF 89), a few telephonic settlement calls, (ECF Nos. 101, 104), and the withdrawal of Plaintiff's former counsel. (ECF 105).

discovery, (ECF 70, 75, 80; Judge Broderick's order of referral; the entry of the civil case management plan; the parties' negotiated extension of time for Defendants to answer; and Defendants' answer, filed on February 9, 2022. (ECF 78). Plaintiff also sought in 2022 to take two to three depositions (including Schneider's deposition) and has not sought to extend the April 2022 fact discovery deadline since the second stay was lifted in July 2024.

In sum, this case was on the Court's active docket for more than three years (at least from March 1, 2019 to March 8, 2022), during which time Plaintiff never raised the possibility of amendment despite being aware of the identities of the "new" defendants and the facts pleaded to support the new claims as early as 2015, and Plaintiff raised these issues frequently in arbitration and in the motion to vacate, without once seeking to amend. For these reasons, Plaintiff has <u>not</u> shown diligence to support good cause for amendment.

### 2. *Permitting amendment would prejudice defendants*

When assessing whether a proposed amendment is unduly prejudicial, courts consider whether the assertion of the new claim or defense would: (1) require the non-movant to expend significant additional resources to conduct discovery and prepare for trial; (2) significantly delay the dispute's resolution; or (3) prevent the plaintiff from bringing a timely action in another jurisdiction. *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 284 (2d Cir. 2000) (citing *Block*, 988 F.2d at 350). A court is "most hesitant to allow amendment where doing so unfairly surprises the non-movant and impedes the fair prosecution of the claim." *Monahan*, 214 F.3d at 284.

Plaintiff suggests that "because discovery has not commenced in the instant action as a result of the stays, no trial date has been set . . . , and no motion for summary judgment has

8

been filed," Defendants will not suffer prejudice as a result of the proposed amendment. (ECF 124 ¶ 15). Defendants' opposition brief does not address prejudice and skips directly to futility of the claims. (See ECF 129 at 16-17).

While no trial date has been set, Plaintiff is mistaken in asserting that discovery "has not commenced;" discovery re-commenced shortly after the multi-year FINRA arbitration was concluded. (*See* ECF 70, 75, 80). Merrill intended to rely on the extensive document discovery and testimony obtained during discovery in the FINRA arbitration. In these status letters, Plaintiff indicated that if they were not able to work through some brewing discovery disputes (centering largely around Defendant's responses and difficulty in scheduling three proposed nonparty depositions), "Plaintiffs [sic] will have no choice[] but to seek intervention of this Court, to compel compliance with Plaintiffs' discovery responses." (ECF Nos. 75 at 3, 80 at 3). During this time, Plaintiff sought at least Schneider's deposition.[4] After the second stay expired last year, Plaintiff did not seek to depose Mr. Alekseenko or any other witnesses proposed in the earlier status reports, nor have the parties sought to extend the fact discovery deadline. Here, allowing amendment would unfairly surprise the new proposed defendants and impede the fair prosecution of the claim. Plaintiff seeks to add two defendants and several claims that were not even raised in the arbitration—including civil RICO and breach of fiduciary duty—after more than <u>10 years</u> of arbitration and litigation. Amendment, if granted, will lead to motions to dismiss on timeliness, futility, and estoppel, causing yet more delay and cost. Indeed, because fact discovery has not been extended and Plaintiff appears to have abandoned his attempts to

---

[4] Plaintiff also scheduled a deposition of "a witness . . . in Florida" for February 3. 2022. (ECF 75 at 2). Nikitin is alleged to live in Florida (ECF 125-3 ¶ 5), but Plaintiff has not indicated whether this was to be Nikitin's deposition, nor has Plaintiff indicated whether this deposition took place. (ECF 80). The parties' February 28, 2022, status report repeats the same prospective language from ECF 75.

conduct depositions, there is nothing left for this case but dispositive motions and/or trial. (*See* ECF 129 at 16-17). Accordingly, amendment at this stage would prejudice the current and proposed new defendants.

IV. **CONCLUSION**

Because I find that Plaintiff has not justified the delay in seeking amendment and because the non-movants will be prejudiced by the proposed amendment, Plaintiff has not satisfied Rule 16's "good cause" requirement for the proposed amended complaint, and Plaintiff's motion for leave to amend his complaint is **DENIED**. Because I am denying amendment solely on procedural grounds, I take no position on the timeliness and merits of the proposed new claims.

The operative complaint and answer in this action are located at ECF 1 and 78, respectively. Discovery is closed. The parties are directed to appear for a post-discovery status conference on **Wednesday, March 5, 2025, at 2:00 p.m.** in Courtroom 20D, 500 Pearl Street, New York, NY 10007. A joint proposed agenda or status letter shall be filed no later than **Monday, March 3**, 2025.

**SO ORDERED.**

Dated: February 25, 2025
New York, New York

*/s/ Ona T. Wang*
**Ona T. Wang**
United States Magistrate Judge